No. 26-1105

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

SUSAN TINCHER, *et al.*,

*Petitioners,*

v.

KRISTI NOEM, *in her official capacity as Secretary of U.S. Department of Homeland Security*, *et al.*,

*Respondents.*

On Petition for Review from the United States District Court of Minnesota

**BRIEF OF IOWA AND 20 ADDITIONAL STATES SUPPORTING APPELLANT'S EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL AND REVERSAL**

BRENNA BIRD
Attorney General of Iowa

January 21, 2026

ERIC WESSAN
Solicitor General

Assistant Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

*Counsel for Amicus Iowa Attorney General's Office
(Additional counsel listed after signature block)*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ..................................................................................... ii

STATEMENT OF AMICUS CURIAE ..................................................................... 1

SUMMARY OF ARGUMENT ................................................................................ 2

ARGUMENT ............................................................................................................ 3

   I.   Federal Rule of Civil Procedure 23(a) Establishes Standards Required for a Class Action—and the District Court Decided It Needed No Factors to Grant Class-Wide Relief. ............................ 3

  II.  Courts in this Circuit Repeatedly Err by Entering Injunctions Without Following Rule 65(c)'s Mandatory Bond Requirement. ... 12

CONCLUSION ....................................................................................................... 14

ADDITIONAL COUNSEL .................................................................................... 15

CERTIFICATE OF COMPLIANCE ...................................................................... 16

CERTIFICATE OF SERVICE ............................................................................... 16

# TABLE OF AUTHORITIES

Cases

*A.A.R.P. v. Trump*,
　605 U.S. 91 (2025) ........................................................................................... 2
*Amchem Prods., Inc. v. Windsor*,
　521 U.S. 591 (1997) ..................................................................................... 8, 9
*Conway v. Taylors Ex'r*,
　66 U.S. 603 (1861) ........................................................................................... 4
*Davis v. Mineta*,
　302 F.3d 1104 (10th Cir. 2002) ..................................................................... 12
*Devlin v. Scardelletti*,
　536 U.S. 1 (2002) ............................................................................................ 5
*Hook v. Rave*,
　2025 WL 2720978 (D.S.D. Sept. 24, 2025) ................................................... 13
*Hyll v. Xyquad, Inc.*,
　939 F.2d 627 (8th Cir. 1991) .................................................................... 12, 13
*In re Cement Antitrust Litig. (MDL No. 296)*,
　688 F.2d 1297 (9th Cir. 1982) ....................................................................... 10
*Luiken v. Domino's Pizza, LLC*,
　705 F.3d 370 (2013) ................................................................................ 7, 8, 9
*Mader v. United States*,
　654 F.3d 794 (8th Cir. 2011) ......................................................................... 13
*Monarch Chem. Works, Inc. v. Exon*,
　452 F.Supp. 493 (D. Neb. 1978) .................................................................... 12
*Powers v. Credit Mgmt. Servs., Inc.*,
　776 F.3d 567 (8th Cir. 2015) ........................................................................... 8
*Rathmann Grp. v. Tannenbaum*,
　889 F.2d 787 (8th Cir. 1989) ......................................................................... 12
*Richland/Wilkin Jt. Powers Auth. v. U.S. Army Corps of Engineers*,
　826 F.3d 1030 (8th Cir. 2016) .................................................................. 12, 13
*SAV-RX Prescription Services, Inc. v. Drugsite Ltd.*,
　2023 WL 9050928 (D. Neb. Dec. 29, 2023) .................................................. 13
*Smith v. Bayer Corp.*,
　564 U.S. 299 (2011) ..................................................................................... 5, 7
*Smith v. ConocoPhillips Pipe Line Co.*,
　801 F.3d 921 (8th Cir. 2015) ...................................................................... 8, 10

*T.L. ex rel. Ingram v. United States*,
  443 F.3d 956 (8th Cir. 2006) ............................................................... 13
*Trump v. CASA, Inc.*,
  606 U.S. 831 (2025) ........................................................................ 3, 4
*United States v. Donath*,
  107 F.4th 830 (8th Cir. 2024) ............................................................ 13
*United States v. Sanchez-Gomez*,
  584 U.S. 381 (2018) ............................................................................ 5
*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ............................................................................ 6
*Webb v. Exxon Mobil Corp.*,
  856 F.3d 1150 (8th Cir. 2017) ......................................................... 9, 10

Statutes

28 U.S.C. § 455 .................................................................................. 10, 11

Rules

Fed. R. Civ. P. 23 ........................................................ 3, 4, 5, 6, 7, 8, 9, 11

Other Authorities

2 W. Rubenstein, *Newberg & Rubenstein on Class Actions* § 4:30 (6th ed.
  Dec. 2025 update) ................................................................................ 7

# STATEMENT OF AMICUS CURIAE

Like illegal immigrants entering our country, disruptive protests and disorder do not stay contained to one city or State. As part of a nationwide effort to crack down on the illegal immigration crisis, the federal government has sent a surge of law enforcement personnel to protect the people of Minnesota.

Responding to federal enforcement, protesters have taken increasingly aggressive tactics to interfere with those federal law enforcement activities. *See* Dkt. 85, at 29 & n.18; *id.* at 30-32. Protesters are blockading buildings, blocking roads, and obstructing church services.

While peaceful protest is protected activity, the First Amendment is not a shield to protect breaking the law and directly impeding federal law enforcement. To protect this not-mostly peaceful protesting, the district court entered a purported class-wide "obey the law" injunction.

Facial injunctions masquerading as class-wide injunctions are improper. There is no special protest exception to Rule 23's standards.

This Court's precedents also muddy the obligation under Rule 65(c) that injunction bonds are mandatory. This Court should clarify that preliminary injunctions against enforcing State or federal governments must be accompanied by reasonable bond. After all, "Any time a state is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Trump v. CASA, Inc.*, 606 U.SS. 831, 861 (2025) (cleaned up).

States have an interest in this Court vacating the injunction for the reasons in the United States's brief, but should also clarify that it is improper to certify a class—even "putatively"—without analysis. Dkt. 85 at 73-77. And that issuing an injunction to private parties without bond is improper and an independent ground to vacate. *Id.* at 79-80.

## SUMMARY OF ARGUMENT

1. The district court overinterprets the emergency docket ruling in *A.A.R.P. v. Trump*, 605 U.S. 91, 97 (2025), to eliminate the requirements needed to justify a class action.

2. Rule 65(c) is mandatory for injunctions against enforcing state or federal law.

2

# ARGUMENT

I. **Federal Rule of Civil Procedure 23(a) Establishes Standards Required for a Class Action—and the District Court Decided It Needed No Factors to Grant Class-Wide Relief.**

The district court erred by embracing a theory of class-wide relief that cannot be found or justified by the federal rules. Indeed, the district court recognized that the emergency order on which it relied was likely sharply curtailed by a published merits opinion "issued just 42 days" later. Dkt. 85 at 77 n. 23 (comparing *A.A.R.P. v. Trump* with *Trump v. CASA, Inc.*, 606 U.S. 831, 843 (2025)).

In short, the district court recognized that *CASA* limited the availability of facial relief but issued facial relief as class-wide. *Id.* at 74. And it did so because the Supreme Court declined in *one* emergency order, to reach the question of the propriety of "putative" class-wide relief. *Id.* at 73-74.

Misdescribing facial relief as class-wide relief, the district court characterized *A.A.R.P.* as "functionally track[ing] with a body of well-established caselaw allowing courts to issue a class-wide preliminary injunction before determining if class certification is appropriate." *Id.* at 74. And that error can be summarized as collapsing likelihood of success

3

on the merits into an automatic finding that "class-wide relief in a preliminary injunction is improper." *Id.* at 76.

But that cannot be. For one, the district court followed the Supreme Court in analogizing the availability of class-wide relief to a historic "bill of peace." *Id.* at 76 (citing *CASA*, 606 U.S. at 847-49). But the bill of peace is not an action that remains available today. It is an ancestor to what is now codified as Federal Rule of Civil Procedure 23. *See* Fed. R. Civ. P. 23(a); Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 4(a).

The district court thus lacks authority to issue preliminary relief to putative classes—and the potential implications of such relief are severe. And improper putative class-action relief violates the core of equity. Equitable relief cannot "go beyond the case before it." *Conway v. Taylors Ex'r*, 66 U.S. 603, 632 (1861). Indeed, giving relief to non-parties cannot be reconciled with traditional equity jurisprudence. *CASA*, 606 U.S. at 832.

The Court clarified in *CASA*, that federal courts may give relief to classes of plaintiffs—but the mechanism to do so is Rule 23. To do that, courts must determine whether a proposed class satisfies Rule 23.

4

Under Rule 23(a), certifying a class "requires numerosity (such that joinder is impracticable), common questions of law or fact, typicality, and representative parties who adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Next, "[a] class action may be maintained if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b).

Class relief does not violate the party-specific-relief principle because certified class members "are considered parties to the litigation in many important respects" and "[are] 'bound by [the court's] judgment'"—win or lose. *United States v. Sanchez-Gomez*, 584 U.S. 381, 387 (2018) (citing *Devlin v. Scardelletti*, 536 U.S. 1, 7, 9–10 (2002)); *see Smith v. Bayer Corp.*, 564 U.S. 299, 315 (2011). Thus, if plaintiffs here lose, then all class members are prevented from suing the parties in the case. Class actions remove the asymmetry problem that offends equity. *See* Elias Neibart, *The Rise of the All-Writs-Act-Putative-Class-Injunction*, 77 Baylor L. Rev. __, (forthcoming 2025) at *7.

5

That reflects Rule 23's requirements. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011) (requiring "rigorous analysis[]" to certify classes). First, formal class certification must be issued—only then, can relief follow. Indeed, the Advisory Committee's 2003 amendments to Rule 23 clarified that "[a] court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met." Fed. R. Civ. P. 23(c)(1)(C) advisory committee's note to 2003 amendment. That Committee specifically "deleted" language from an earlier version of the Rule that permitted conditional certification. *Id.* The Rule does not allow for provisional or putative certification.

The district court likely stretched for a provisional class designation because Rule 23 itself could not bear the injunction. Thus when a court is granting relief to a non-certified class, the putative class is receiving relief despite explicit inclusion of non-parties. Due to the sharp spike in groups seeking this unavailable-under-Rule 23 relief, some courts have instead turned to the All Writs Act. *See Neibert, supra*, at *14. Fortunately, the district court here did not even purport to ground its unlawful putative class certification there—where it certainly does not belong.

Even though one treatise has adopted the availability of putative class action relief, and that the Supreme Court has acquiesced without ruling on its propriety, there are several reasons this Court should be concerned with the practice. *Cf.* Dkt. 85 at 74 (citing 2 W. Rubenstein, *Newberg & Rubenstein on Class Actions* § 4:30 (6th ed. Dec. 2025 update)). One concern, raised by the Supreme Court, is that "[n]either a proposed class action nor a rejected class action may bind nonparties. What does have this effect is a class action approved under Rule 23." *Smith*, 564 U.S. at 315.

Applying Rule 23's normal requirements to the class here shows why class certification here was premature and in error. Setting aside numerosity, which is likely met by the defined class, typicality, commonality, and adequacy are all potential problems for Plaintiffs. Fed. R. Civ. P. 23(a).

Commonality is not a given. In *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370 (2013), this Court found that even purchasers of pizza did not have common claims that could be resolved via class action. *Id.* at 376-77. Different statements made by Domino's employees to different customers helped defeat commonality. *Id.* at 377. Unlike there, here

7

there are far more differences in how the class is treated by the law enforcement. *See also Smith v. ConocoPhillips Pipe Line Co.*, 801 F.3d 921, 927 (8th Cir. 2015) (vacating for failure to meet commonality).

In another example, this court explained that "[c]ommonality requires a showing that class members 'have suffered the same injury.'" *Powers v. Credit Mgmt. Servs., Inc.*, 776 F.3d 567, 571 (8th Cir. 2015). In *Powers*, this Court explained that what matters for class certification is not common "questions" but instead common "answers"—answers available in class-wide proceedings. *Id.* There, individualized harms to different individuals across the state defeated commonality. And that problem "cannot be ignored at the certification stage." *Id.* at 572.

Another vital issue is predominance, which is required by Rule 23(b)(3), which mandates that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Luiken*, 705 F.3d at 377 (citing Fed. R. Civ. P. 23(b)). The predominance factor "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). And that

8

standard is "far more demanding" than the requirement under commonality. *Id.*

If "varied context of the transactions" made it unreasonable to certify a class of similar pizza purchasers, the district court makes no argument as to why the "similarly situated protesters and observers" have common claims or typical injuries. Dkt. 85 at 78. Indeed, the very nature of agglomerating protesters and observers justifies more than just cursory review.

This Court affirmed a class's decertification based on the class of plaintiffs failing to show how their "breach of contract" claims would vary based on "where individual class members' property is located, as well as many other factors." *Webb v. Exxon Mobil Corp.*, 856 F.3d 1150, 1156 (8th Cir. 2017). The Court explained that even if the plaintiffs could meet "commonality under Rule 23(a)(2)," they could not meet the "'far more demanding' predominance requirement under Rule 23(b)(3)." *Id.* (citing *Amchem*, 521 U.S. at 624).

Here, Plaintiffs may contend that all the federal law enforcement operations ongoing are bad, but "[t]oo many individual issue predominate over common ones." *Id.* The people observing the ongoing law

9

enforcement operation do not "suffer[] the same injury." *Webb*, 856 F.3d at 1156 (quoting *Smith*, 801 F.3d at 925). Even on Plaintiffs' own terms, some record, some are being arrested, some are just watching from a street. While none of those individuals necessarily suffer *any* injury, the injuries any do suffer cannot predominate throughout the class.

Finally, there is now a putative class action certified in this case. Perhaps, for any one of several reasons, the parties later agree to settle. Do all members of the class of, "All persons who do or will in the future, record, observe, and/or protest against Operation Metro Surge and related operations" have their constitutional claims extinguished? Dkt. 85 at 77. If an activist unaware of this lawsuit is injured or harmed or later seeks relief, are those claims extinguished? Under a class action settlement, the answer must be yes.[1]

---

[1] Also, in normal class action cases, the class is carefully defined—for good reason. *See, e.g.*, *In re Cement Antitrust Litig. (MDL No. 296)*, 688 F.2d 1297, 1315 (9th Cir. 1982)*, aff'd sub nom. Arizona v. U.S. Dist. Ct. for Dist. of Arizona,* 459 U.S. 1191 (1983)*, and supplemented sub nom. State of Ariz. v. U.S. Dist. Ct. for Dist. of Ariz.*, 709 F.2d 521 (9th Cir. 1983) (affirming recusal due to financial interest of Judge's wife under 28 U.S.C. § 455).

Here, the Judge could be defined as "[a]ll persons" that may "observe" the law enforcement activities. Dkt. 85 at 77. There is a plausible argument that her "impartiality might reasonably be

Yet will the members of the class, who the district court found to have serious constitutional infringements, be afforded notice before their claims are extinguished? How? Is the class ascertainable? Disruptive protests across Minneapolis likely have many "persons" who "observe" Operation Metro Surge. *Id.* at 77. If the case settles, claims are extinguished, and a person who had a car clipped by a Metro Surge vehicle brings a claim can they? This undertheorized approach to putative class-action relief risks extinguishing for many important constitutional claims without the due process codified in Rule 23 and the Class Action Fairness Act.

The district court effectively found that because Plaintiffs have a likelihood of success on the merits in their challenge to the federal law enforcement operation that they also shall be certified as a putative class. But such certification ignores Rule 23, is not justified by *A.A.R.P.*, and is a work around to the rule established in *CASA*.

---

questioned." 28 U.S.C. § 455(a). None of this is to call for the district court's recusal, but to note some of the logistical problems with ill-defined attempts to putatively certify classes.

11

## II. Courts in this Circuit Repeatedly Err by Entering Injunctions Without Following Rule 65(c)'s Bond Requirement.

This Court has long understood the bond requirement to be mandatory in most circumstances—and often imposed at significant amounts. *See, e.g.*, *Hyll v. Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir. 1991); *see Rathmann Grp. v. Tannenbaum*, 889 F.2d 787, 789 (8th Cir. 1989). Despite those precedents recognizing the mandatory bond requirement when injunctions are sought by private parties, this Court recently required "minimal bond[] because of the important public interest in the enforcement of NEPA." *Richland/Wilkin Jt. Powers Auth. v. U.S. Army Corps of Engineers*, 826 F.3d 1030, 1043 (8th Cir. 2016).

*Richland* erred by imposing an atextual "important public interest" exception to bond—an exception that cannot be reconciled with this Court's earlier cases. *Id.*; *cf. Hyll*, 939 F.2d at 632. Indeed, *Richland* itself characterized a case imposing a $10,000 bond as "minimal." *Id.* (citing *Monarch Chem. Works, Inc. v. Exon*, 452 F.Supp. 493, 503 (D. Neb. 1978)). One case *Richland* relied on for issuing no bond was a Tenth Circuit case that asked the district court to impose a bond. *Id.* (citing *Davis v. Mineta*, 302 F.3d 1104, 1126 (10th Cir. 2002)).

12

But those earlier cases vacated preliminary injunctions based on no bond being issued. *See Hyll*, 939 F.2d at 632. That means *Richland*'s later conflicting holding violates earlier published Eighth Circuit cases.

Under the prior panel rule, this Court "is bound by the decision of a prior panel." *United States v. Donath*, 107 F.4th 830, 836 (8th Cir. 2024) (quoting *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc)). "[W]hen faced with conflicting panel opinions, the earliest opinion must be followed 'as it should have controlled the subsequent panels that created the conflict.'" *Mader*, 654 F.3d at 800 (quoting *T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006)).

Earlier panels recognized Rule 65(c)'s mandatory language. *Richland* broke from those prior precedents to create a new atextual exception to the Rule's text. *See Richland*, 826 F.3d at 1043.

This is a pervasive issue in the district courts across the circuit, which share the perspective that preliminary injunctions against enforcing state or federal laws are not subject to meaningful bond. *See, e.g., Hook v. Rave*, 2025 WL 2720978, at *6 (D.S.D. Sept. 24, 2025) (citing *Richland* to "exercise[] its discretion to waive the bond requirement"); *SAV-RX Prescription Services, Inc. v. Drugsite Ltd.*, 2023 WL 9050928,

13

at *2 (D. Neb. Dec. 29, 2023) (same). The prior panel rule and clarifying that *Richland* violates Rule 65(c) will thus aid the district courts across this Circuit in applying the correct law.

## CONCLUSION

The Court should grant the request to stay the improperly entered preliminary injunction.

January 21, 2026                                  Respectfully submitted,

                                                  BRENNA BIRD
                                                  Iowa Attorney General

                                                  */s/ Eric Wessan*
                                                  ERIC WESSAN
                                                  *Solicitor General*
                                                  Hoover State Office Building
                                                  1305 East Walnut Street
                                                  Des Moines, Iowa 50319
                                                  Phone: (515) 823-9117
                                                  eric.wessan@ag.iowa.gov

                                                  *Counsel for the Amicus Curiae
                                                  State of Iowa*

14

# ADDITIONAL COUNSEL

Steve Marshall
Attorney General of Alabama

Stephen J. Cox
Attorney General of Alaska

Tim Griffin
Attorney General of Arkansas

James Uthmeier
Attorney General of Florida

Chris Carr
Attorney General of Georgia

Raúl R. Labrador
Attorney General of Idaho

Theodore E. Rokita
Attorney General of Indiana

Kris Kobach
Attorney General of Kansas

Liz Murrill
Attorney General of Louisiana

Lynn Fitch
Attorney General of Mississippi

Catherine Hanaway
Attorney General of Missouri

Austin Knudsen
Attorney General of Montana

Michael T. Hilgers
Attorney General of Nebraska

John Formella
Attorney General of New Hampshire

Drew Wrigley
Attorney General of North Dakota

Gentner Drummond
Attorney General of Oklahoma

Alan Wilson
Attorney General of South Carolina

Marty Jackley
Attorney General of South Dakota

Ken Paxton
Attorney General of Texas

John B. McCuskey
Attorney General of West Virginia

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(a)(5) because this brief contains 2,594 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: January 21, 2026

/s/ *Eric H. Wessan*
Solicitor General

# CERTIFICATE OF SERVICE

The undersigned certifies that on the twenty-first day of January, 2026, this brief was electronically filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ *Eric H. Wessan*
Solicitor General