## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

SUSAN TINCHER, ET AL.,

*Appellees,*

VS.

KRISTIN NOEM, IN HER OFFICIAL CAPACITY AS SECRETARY, U.S. DEPARTMENT OF HOMELAND SECURITY, ET AL.,

*Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
CASE NO.: 25-CV-04669-KMM-DTS
THE HONORABLE KATHERINE MENENDEZ

### PLAINTIFFS-APPELLEES' RESPONSE TO DEFENDANTS-APPELLANTS' EMERGENCY MOTION FOR A STAY PENDING APPEAL AND AN IMMEDIATE ADMINISTRATIVE STAY AND CROSS EMERGENCY MOTION TO LIFT THE ADMINISTRATIVE STAY

Teresa Nelson (#269736)
Catherine Ahlin-Halverson (#350473)
Alicia Granse (#400771)
**AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**
P.O. Box 14720
Minneapolis, MN 55414
Tel: (651) 529-1692

Kyle W. Wislocky (#393492)
Jacob F. Siegel (#399615)
**CIRESI CONLIN LLP**
225 South 6th Street, Suite 4000
Minneapolis, MN 55402
(612) 361-8200
KWW@ciresiconlin.com
JFS@ciresiconlin.com

tnelson@aclu-mn.org

cahlin@aclu-mn.org

agranse@aclu-mn.org

Kevin C. Riach (#389277)
**THE LAW OFFICE OF KEVIN C.
RIACH**

125 Main St. SE, Suite 339

Minneapolis, MN 55414

(612) 203-8555

kevin@riachdefense.com

Robert J. Gilbertson (#22361X)

Caitlinrose H. Fisher (#398358)

Virginia R. McCalmont
(#399496)

Jackson C. Evert (#402214)

Rebecca R. Rogers (#403827)

**FORSGREN FISHER
MCCALMONT DEMAREA
TYSVER LLP**

225 South Sixth St., Suite 1500

Minneapolis, MN 55402

Tel: (612)-474-3310

bgilbertson@forsgrenfisher.com

cfisher@forsgrenfisher.com

vmccalmont@forsgrenfisher.com

jevert@forsgrenfisher.com

rrogers@forsgrenfisher.com

*Attorneys for Appellees*

## Table of Contents

Introduction .................................................................................................1

Background ..................................................................................................2

   I.   The district court made extensive factual findings. ................................3

   II.  The district court's narrow injunction does not endanger officer or public safety.....................................................................................6

Legal Standard ............................................................................................7

Argument .....................................................................................................8

   I.   Appellants have not made a "strong showing" of likelihood of success on the merits.................................................................8

       A.   Appellees have standing for prospective injunctive relief. ...........8

       B.   The injunction is "workable." ........................................................12

            1.   The injunction is not too vague to be enforced. ....................12

            2.   The rule against follow-the-law injunctions does not apply. ...........................................................................16

       C.   The district court did not abuse its discretion by concluding that Appellees are likely to succeed on the merits of their claims. .....18

   II.  The remaining factors counsel against a stay.........................................22

   III. Appellants' arguments are best addressed through expedited merits review. .................................................................................25

Conclusion..................................................................................................26

Certificate of Compliance .........................................................................29

Certificate of Service ................................................................................30

i

## Introduction

A month and a half after the start of Appellants' Operation Metro Surge, the district court entered a detailed 83-page order describing Appellants' repeated and unjustified retaliation and unlawful seizures of peaceful, unobstructive protesters. Fulfilling its Article III duty, it issued a narrowly tailored preliminary injunction to protect the core constitutional rights of peaceful Minnesotans to gather, observe, and protest government action free from intimidation, harassment, and violence.

In doing so, the court ensured that its "injunction does nothing to prevent [Appellants] from continuing to enforce immigration laws," (Doc. 85 at 72) and protected their full power to respond "as necessary to [] protest activity when it crosses the line from protected to unlawful." (*Id.* at 79.) The only thing the injunction reaches is retaliation and illegality, not legitimate law enforcement.

Appellants' request to stay that well-founded order engages with none of these realities. In their eagerness to have all restrictions against their unlawful conduct removed, Appellants have apparently concluded that it is easier to argue against a strawman injunction restricting their ability to "respond to protestors' obstructive and violent interference," (Mot. at 2),

1

than it is to brief and argue the actual injunction the court ordered. Likewise, they rely heavily on fabrications that have zero basis in the record before this Court, such as that each Appellee "themselves interfered with" ICE. (Mot. at 3).

A stay pending appeal is the exception, not the rule. Appellants have not met their burden to show one is appropriate here. Their merits arguments fail as described below and by the district court. Critically, Appellants face no injury whatsoever from complying with the Constitution and the narrow injunction. In contrast, protesters and observers face grave, potentially deadly, consequences from the injunction being lifted.

This Court should follow the less dangerous path, consistent with the regular judicial process, and 1) lift the administrative stay, 2) deny the motion for stay pending appeal, and 3) set expedited merits briefing so that the injunction's propriety can be swiftly litigated and affirmed with the benefit of fully developed briefing.

## Background

At Appellants' urging, the district court converted Appellees' request for a temporary restraining order into a motion for preliminary injunction. (Doc. 56.) The district court gave Appellants nearly three weeks to

2

investigate and develop a responsive factual record. (*See id.* at 17:23-18:3.) It permitted Appellants to submit responses to every declaration filed by Appellees. (Docs. 44, 70.) It prudently offered Appellants the opportunity to request an evidentiary hearing, but Appellants opted not request one. (Doc. 24.)

## I. The district court made extensive factual findings.

The backbone of the district court's ruling is its conclusion that the record in this case reflects a "qualitative imbalance." (Doc. 85 at 40.)[1] Appellees' declarations are "sworn under penalty of perjury" and premised on the "personal experiences and knowledge" of each declarant. (*Id.* at 37.) On the other hand, Appellants' submitted a single declaration by David Easterwood, the Acting ICE Field Office Director for St. Paul, Minnesota. (Doc. 47.) Mr. Easterwood's declaration "is not derived from firsthand observations," but rather relies on conversations with other unnamed federal agents and "review of unspecified information maintained by DHS." (Doc. 85 at 38.) The district court analyzed this documentary evidence over 29 pages of its order. (*Id.* at 4-33.) Ultimately, it found that Appellees'

---

[1] Citations in this brief are to CM/ECF pagination.

3

"declarations are entitled to substantial weight" and Appellants' single declaration is "entitled to considerably less weight." (*Id.* at 37-38.)

The district court's subsequent legal conclusions flow from these findings. The injunction covers a targeted set of constitutional violations and, with the Government's blessing, leaves the details of "figuring out how [the injunction is] honored" to Appellants. (PI Tr. at 85-86.) The injunction is narrower than Appellees sought. (Doc. 38.) And it is narrower than the injunctions that issued in the Seventh and Ninth Circuits. The former enjoined even the President and was "prescriptive" to the point of "resembl[ing] a federal regulation." Order, *Chicago Headline Club v. Noem*, No. 25-3023 (7th Cir. Nov. 19, 2025). The Seventh Circuit stayed the injunction primarily on overbreadth concerns, while noting that a "more tailored and appropriate preliminary injunction" may be supported. *Id.* The Ninth Circuit *declined* to stay the latter injunction at all with respect to the protections afforded to legal observers, even in the absence of class allegations like those here. *Compare* Order, *L.A. Press Club v. Noem*, No. 25-

4

5975 (9th Cir. Dec. 18, 2025), *with L.A. Press Club v. Noem*, 799 F. Supp. 3d 1036, 1073-74 (C.D. Cal. 2025).[2]

Appellants' stay motion ignores the district court's factual findings and the deference this Court must give to them. Instead, Appellants rely on facts that are not only contrary to the district court's findings, but demonstrably false. (*Compare* Mot. at 3 (claiming Appellees "interfered with Immigration and Customs Enforcement (ICE) officers") & 6 (claiming all plaintiffs "endangered and interfered with ICE officers"), *with* Doc. 85 at 67 (noting that Appellants failed to provide any evidence of even arguable interference by several plaintiffs); *compare also* Mot. at 8 (describing Plaintiffs "chas[ing] an ICE vehicle in their car[s]"), *with* Doc. 85 at 15-19 (Plaintiffs were driving "carefully and lawfully" before ICE officers seized and pointed semiautomatic weapons at them)).

Appellants cite to no record evidence to support these baseless factual allegations and none exists. (*See, e.g.*, Mot. at 3 (no citation supporting

---

[2] Citing *Trump v. C.A.S.A.*, discussed *infra*, the Ninth Circuit stayed the preliminary injunction solely with respect to injunctive provisions that applied to "protestors who are not parties to this litigation." Order, *L.A. Press Club v. Noem*, No. 25-5975 (9th Cir. 2025).

5

alleged interference), 8 (no citation supporting alleged chasing)). In any event, it is the district court's detailed and correct findings that are operative and entitled to deference here, not Appellants' mischaracterizations.

## II. The district court's narrow injunction does not endanger officer or public safety.

Appellants similarly mischaracterize the injunction itself. The district court made certain the injunction would not endanger officer or public safety; it did so by cabining the injunction's protections to peaceful activity.[3] At every turn, the injunction permits Appellants to respond appropriately should protest or observation activity turn violent:

- Injunction paragraph 3(a) enjoins retaliation only against "peaceful and unobstructive" individuals;

- Injunction paragraph 3(b) enjoins arrest or detention only of "persons who are engaging in peaceful and unobstructive" activity;

- Injunction paragraph 3(c) enjoins use of crowd control munitions only against "persons who are engaging in peaceful and unobstructive" activity;

---

[3] Indeed, it did so notwithstanding the fact that other courts have concluded Appellants invoke safety concerns as a cover to justify unconstitutional and dangerous conduct. *See L.A. Press Club*, 799 F. Supp. 3d at 1046 ("[U]nder the guise of protecting the public, federal agents have endangered large numbers of peaceful protestors, legal observers, and journalists.").

6

- Injunction paragraph 3(d) does not enjoin all vehicle seizures, only those made in the absence of "reasonable articulable suspicion [of] forcibly obstructing or interfering with Covered Federal Agents."

In sum, as the district court explained, the injunction appropriately avoids "overly prescriptive rules" and permits Appellants to act if protest "crosses the line from protected to unlawful." (Doc. 85 at 79.) The court similarly noted that actually dangerous drivers may be arrested. (Doc. 85 at 68.)

## Legal Standard

"A stay is an intrusion into the ordinary processes of administration and judicial review and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). This Court may stay a district court order pending appeal only upon Appellants meeting their burden to show four factors: (1) whether the movant "has made a strong showing" of likelihood of success on appeal; (2) whether the movant "will be irreparably injured absent a stay"; (3) whether "issuance of the stay will substantially injure" other parties to the proceeding; and (4) the public interest. *Id.* at 434. Even if the movant shows it is likely to succeed on appeal, "*a showing of*

*irreparable injury without a stay is also required.*" *Kansas v. United States*, 124 F.4th 529, 533 (8th Cir. 2024) (citation omitted).

Further, an administrative stay "should last no longer than necessary to make an intelligent decision on the motion for a stay pending appeal." *United States v. Texas*, 144 S.Ct. 797, 799 (Barrett, J., concurring) (cautioning courts against "avoid[ing] *Nken* for too long").

## Argument

A stay pending appeal will not prevent irreparable harm to a party or the public—it will condone it. Because each *Nken* factor favors Appellees, the administrative stay should be immediately lifted and Appellants' motion for a stay pending appeal should be denied.

## I. Appellants have not made a "strong showing" of likelihood of success on the merits.

### A. Appellees have standing for prospective injunctive relief.

The district court correctly concluded Appellees have standing to seek prospective relief on their First and Fourth Amendment claims. (Doc. 85 at 40-47.) As to Appellees Tincher, Noor, and Crenshaw, it explained that a "chill" on First Amendment freedom confers standing when coupled with a "threat of future enforcement" and "future prosecution" for engaging in

8

protected First Amendment activities. *Id.* at 43-44 (citation omitted); *see also, e.g.*, *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789, 794 (8th Cir. 2016). Appellants' motion fails to address the unique context of First Amendment injuries entirely and thus does nothing to challenge those Appellees' standing.

The district court also properly concluded that Appellees Biestman, Lee, and Webb have standing to pursue prospective relief on their Fourth Amendment claims. It is not speculative that Plaintiffs face an imminent risk of seizure in the future. (Doc. 50 at 45-47.) As the district court noted, 15 of Appellees' 34 declarations attested to a "nearly identical set of circumstances" of individuals lawfully following ICE vehicles and being seized. (Doc. 85 at 45.)

Appellants unpersuasively argue that their conduct is not a "pattern" because their repeated violations occurred under "different circumstances," and because individuals following ICE vehicles were seized "in a variety of ways." (Mot. at 13 (quoting Doc. 85 at 20).) But Appellants offer no authority that there is constitutional significance to the fact that plaintiffs Biestman and Lee were both seized and had semi-automatic weapons pointed in their faces, whereas plaintiff Webb was seized and merely threatened with arrest.

Each Appellee (and numerous declarants besides) was seized without reasonable suspicion consistent with Appellants' widespread, ongoing, and unrenounced policy to seize peaceful, law-abiding protesters and observers. Even the authorities cited by Appellants recognize that fact confers standing. *See Rizzo v. Goode*, 423 U.S. 362, 374 (1967) (recognizing classwide relief is appropriate where there is "no mistaking that the defendants proposed to continue their unconstitutional policies against the members of [a] discrete group.").

In arguing otherwise, Appellants primarily rely on *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). The district court correctly rejected Appellants' *Lyons* arguments and so should this Court. (Doc. 85 at 46-7.) Here, each Appellee has a future intention to "continue to observe and follow federal agents," differentiating them from the plaintiff in *Lyons* who had no intention to "break the law again" nor desire to reencounter law enforcement. (*Id.* at 46.) Appellants' actions likewise contrast with those in *Lyons.* Here, "[Appellants] maintain that the actions of their officers are a lawful response to ongoing widespread protest activity," (*Id.* 85 at 71), and Appellants nowhere (in the district court or before this Court) disclaim their intention to continue to seize individuals who have not forcibly obstructed

10

ICE's operations. *Contra Lyons*, 461 U.S. 95, 100 & n.4 (1983) (police department imposed and extended a moratorium on challenged chokeholds).

Appellants' remaining arguments rest on misreadings of two cases. The first, *Spokeo, Inc. v. Robins*, had nothing to do with the declarations of known, identified individuals, like those in the instant record. 578 U.S. 330, 338 n.6 (2016), as revised (May 24, 2016). It instead disallowed reliance on generalized classwide-injuries to supply an injury in fact. *Id.* Unlike in *Spokeo*, each plaintiff established his or her own injury in fact; no plaintiff points to generic class allegations to show that he or she suffered an injury. The second case, *Park v. Forest Service of United States*, 205 F.3d 1034 (8th Cir. 2000), was not "a case in which the unlawful conduct [was] ongoing" at the time the complaint was filed. *Id.* at 1037. Here, the core of both the complaint and the injunction is the unconstitutional treatment of observers and protesters during Operation Metro Surge, an enforcement initiative that was ongoing at the complaint's filing and today. (*See* Doc. 85 at 71 ("this operation . . . appears to still be ramping up.").)

### B. The injunction is "workable."

#### 1. The injunction is not too vague to be enforced.

An injunction must provide a person "of ordinary intelligence . . . a reasonable opportunity to know what is prohibited." *Schenck v. Pro-Choice Network of W. New York*, 519 U.S. 357, 383 (1997). When "read as a whole," if the injunction provides fair notice, then it satisfies the specificity requirements of Rule 65. *Id.* The injunction entered by the district court meets this basic requirement.

Although Appellants claim to be hopelessly confused by nearly every word of the district court's injunction, "the mere fact that interpretation is necessary does not render the injunction so vague and ambiguous that a party cannot know what is expected of him." *United States v. Brown*, 561 F.3d 420, 438 (5th Cir. 2009) (cleaned up). Courts routinely reject vagueness arguments where injunctions set forth their requirements in plain language. *See, e.g.*, *Schenck*, 519 U.S. at 383 (1997) ("demonstrating" not too vague to be understood); *Brown*, 561 F.3d at 438 (same for "equally" and "all electoral duties"); *Power v. Summers,* 226 F.3d 815, 819 (7th Cir. 2000) ("The term 'retaliation' is not so vague that a defendant enjoined from retaliating against a person for exercising his right of free speech would not know what he

12

could and could not do with reference to that person."). Courts are particularly unreceptive to vagueness arguments when the defendants have not sought clarification from the district court. *See Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 536 (8th Cir. 2005).

*Heartland* is instructive. There, the district court enjoined a child-protection official from taking children at a boarding school into protective custody absent "reasonable cause to believe that each child for whom protective custody or removal is sought is in imminent danger of suffering serious physical harm, threat to life from abuse or neglect, or has been sexually abused or is in imminent danger of sexual abuse." *Id.* at 529. The defendant protested that the injunction was too vague, but this Court dismissed that argument as "preposterous," noting the injunction had to be read "in the context of the facts and circumstances of this case." *Id.* at 536. As this Court explained, "anyone acquainted with this case knows precisely the behavior that the injunction is designed to prevent in the future—the behavior that violated the constitutional rights of Heartland and its students in the first place." *Id.*

The same is true here. The district court considered the evidence before it and made factual findings regarding the Appellants' pattern of engaging

13

in unconstitutional retaliation and unreasonable seizures of observers. After discussing the specific unconstitutional conduct suffered by the named plaintiffs, the district court enjoined Appellants from engaging in the same conduct in the future. (Doc 85 at 81-82.) A person of ordinary intelligence can understand what conduct is proscribed in the four operative paragraphs of the injunction.

The only two examples of vague injunctions cited in Appellants' motion prove the point. In *Philadelphia Marine Trade Association*, the injunction at issue stated only that the union was obligated to "comply with" an arbitrator's ruling and "contained no other command." *Int'l Longshoremen's Ass'n, Local 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 69 (1967). After entering the injunction, the district court refused to offer any additional clarification regarding what conduct was prohibited, despite the union's repeated pleas. *Id.* at 70-72. Likewise, in *Daniels v. Woodbury Cnty., Iowa*, 742 F.2d 1128 (8th Cir. 1984), the injunction at issue did nothing other than restrain the defendant from "further actions in violation of the due process rights of general relief applicants." *Id.* at 1132. The district court here did not merely restrain Appellants from "further actions in violation" of the First and Fourth Amendment—the district court

proscribed particular conduct based on Appellants' responses to "peaceful and unobstructive protest activity" during Operation Metro Surge. (Doc. 85 at 82.) Appellants do not point to a single example of a similar injunction found to be too vague to be enforced, much less an example where alleged vagueness was grounds for staying an injunction pending appeal.[4]

Finally, any newfound objection to the specificity of the injunction rests on an invited error. *See Matthew v. Unum Life Ins. Co. of Am.*, 639 F.3d 857, 868 (8th Cir. 2011). Appellants successfully argued to the Seventh Circuit that the district court's injunction there was "too prescriptive" and "resemble[d] a federal regulation." Order, *Chicago Headline Club v. Noem*, No. 25-3023 (7th Cir. 2025). Mindful of this concern, the district court discussed the specificity of injunctive relief with defense counsel at the motion hearing, saying that the court would not "spell . . . out" how to implement the injunction; the court would state the "scope [it] found to be supported by the

---

[4] Nor does the injunction "force[]" officers "to second guess whether they will be subject to contempt for responding to dangerous and unlawful conduct." (Mot. at 15-16.) The district court's order considered and rejected this exact argument because there, as before this Court, "[Appellants] do not explain why it is necessary for them to arrest and use force against peaceful observers . . . to curb other violence or attempts to forcibly obstruct their operations." (Doc. 85 at 71.)

15

evidence and the law . . . and [Appellants] would be responsible for making sure that was honored." (PI Tr. at 85-86.) Appellants agreed that was the proper course. *Id.* They should not be permitted to change tack on appeal.

### 2. The rule against follow-the-law injunctions does not apply.

The district court's order is not a follow-the-law injunction. To be sure, this Court has held that "an injunction which does little or nothing more than order the defendants to obey the law is not specific enough." *Daniels*, 742 F.2d at 1134. But the district court's order is not akin to the improper follow-the-law injunction in *Daniels*, with its naked command not to "violat[e] . . . due process rights." *Id.* at 1132.

*Bennie v. Munn*, 822 F.3d 392 (8th Cir. 2016), explains the distinction between a follow-the-law injunction and an injunction appropriately prohibiting unconstitutional conduct. In *Bennie*, a First Amendment retaliation case, the requested injunction would have prohibited the government defendants from "making inquiries or taking regulatory actions based on [the plaintiff's] protected expression of his political views." *Id.* at 397. This Court rejected the government's argument that the requested injunction was an "unenforceable" follow-the-law injunction. *Id.* Of course,

as this Court explained, courts can enjoin illegal activity. *Id.* That is the precise purpose of injunctions. The "point" of the prohibition on follow-the-law injunctions is that "an injunction cannot be too vague and must give fair and precisely drawn notice of what the injunction actually prohibits." *Id.* (cleaned up). As in *Bennie*, the proposed injunction is "sufficiently specific" to give Appellants fair warning of what they are prohibited from doing. *See id.*

Appellants also raise purported "separation of powers" concerns, accusing the district court of "effectively displacing the Executive with respect to immigration-enforcement operations in Minneapolis." (Mot. at 17.) That accusation is as hyperbolic as it sounds. (*Cf.* Doc. 85 at 72 ("[T]he Court's injunction does nothing to prevent Defendants from continuing to enforce the immigration laws."). Although Appellants accuse the district court of "aggrandiz[ing] the court's power over Executive decision-making," (Mot. at 14), the court's order represents a prototypical judicial act: interpreting the United States Constitution and a federal statute. The D.C. Circuit recently rejected a similar argument when denying these same appellants an administrative stay and nearly all of their request for stay pending appeal. *Make the Road New York v. Noem*, 2025 WL 3563313, at *25

17

(D.C. Cir. Nov. 22, 2025) (per curiam) (rejecting argument as "meritless" because "it is the role of the courts, and not the Political Branches, to say conclusively what the [Constitution] requires"). The Executive's preference to be unrestrained by judicial interpretation of federal law does not present a separation-of-powers issue or a basis to stay the district court's order.

### C. The district court did not abuse its discretion by concluding that Appellees are likely to succeed on the merits of their claims.

Appellants devote less than two pages of their stay briefing to the merits of Appellees' First and Fourth Amendment claims. The bulk of Appellants' arguments are premised on factual disputes that directly contradict the district court's findings, which should not be disturbed absent clear error. *See Lowder v. United States*, 831 F.2d 785, 787 (8th Cir. 1987). There is no error in the district court's thorough record analysis and credibility determinations, which rejected, among other things, any argument that Tincher, Noor, or Crenshaw were "interfer[ing] with law enforcement operations." (Mot. at 18-19; Doc. 85 at 55-62.) Nor did the district court abuse its discretion by enjoining the seizures of individuals driving safely at an appropriate distance behind an ICE vehicle. (*See* Mot. at 18-19.) Appellants tout the same theoretical parade of horribles of potential vehicle collisions

18

that they raised below. When pressed for specifics at the motion hearing, however, Appellants could not identify a single vehicle accident that involved "an observer/protester." (PI Tr. at 59-61.) To this day, Appellants have not done so.

Appellants' merits argument does not concern the injunctive relief for the named plaintiffs, but rather that for the putative class. Appellants are incorrect that the injunction contradicts the Supreme Court's recent decisions in *Trump v. CASA, Inc.*, 606 U.S. 831 (2025) and *A.A.R.P. v. Trump*, 605 U.S. 91 (2025). (Mot. at 19.) The district court's order thoughtfully applied and reconciled those two precedents. It is the Government that seeks to leave one of those two cases (*A.A.R.P.*) "a dead letter." (Mot. at 21.)

In *A.A.R.P.*, the Supreme Court granted an injunction pending further proceedings on behalf of a putative class of detainees subject to removal in a judicial district. 605 U.S. at 92, 98-99. The Court addressed the fact that it was granting putative relief in advance of class certification, explaining:

> [B]ecause courts may issue temporary relief to a putative class, we need not decide whether a class should be certified as to the detainees' [constitutional] claims in order to temporarily enjoin the Government from removing putative class members while the [constitutional question] is adjudicated.

*Id.* at 98 (cleaned up).[5]  The Court stated that it had the power to issue injunctive relief to "prevent irreparable harm to the applicants and to preserve [the Court's] jurisdiction," but it did not state that jurisdiction-preservation was a necessary prerequisite to granting preliminary injunctive relief to a putative class. *See id.* at 97. And that requirement is nowhere to be found in the treatise cited by the Supreme Court, which at that time cited to 19 different federal cases showing that a district court may use its equitable authority to "issue a classwide preliminary injunction in a putative class action suit prior to a ruling on the class certification motion." 2 Newberg and Rubenstein on Class Actions § 4:30 (6th ed. 2022 and 2025 supp).

As the district court concluded, *CASA* did not overrule *A.A.R.P. sub silentio* when it was decided one month later.  (Doc. 85 at 75-77.) In *CASA*, there were no class allegations and therefore relief could not be granted to a putative class. In his concurrence in *CASA*, Justice Kavanaugh explained that "[g]oing forward," consistent with the Court's holding, "perhaps a district

---

[5] In fact, by the time the Supreme Court granted the preliminary injunctive relief, the district court had already "concluded that class certification would be improper[.]" *A.A.R.P.*, 605 U.S. at 111 (Alito, J., concurring). That order was automatically vacated. *Id.* at 97 n.1 (majority).

Appellate Case: 26-1105     Page: 23     Date Filed: 01/22/2026 Entry ID: 5600000

court (or courts) will grant or deny the functional equivalent of a universal injunction—for example, by granting or denying a preliminary injunction to a putative nationwide class under Rule 23(b)(2)." *CASA*, 606 U.S. at 873. The district court's injunction here is far from "universal" and is much narrower than the relief that Justice Kavanaugh noted is consistent with *CASA*'s holding. It applies only within this judicial district and even then, responding to Appellants "expressed concern," the district court limited the injunction to only those individuals assigned to Operation Metro Surge. (Doc. 85 at 79.)

As in *A.A.R.P.*, preliminary classwide relief is necessary to ensure that an Article III remedy is available to countless individuals being injured at the hands of the federal government daily. This Court need not leave Minnesotans without remedies for constitutional violations and effectively condone Appellants' unconstitutional practices while this appeal plays out. (*See* Doc. 85 at 69 (questioning the existence of remedies "aside from injunctive relief.").) It is just these types of exigent circumstances that support preliminary relief "on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *A.A.R.P.*, 605 U.S. at 96 (quoting *Lackey v. Stinnie*, 604 U.S. 192, 200 (2025)).

21

The injunction is temporary and necessary to protect essential constitutional freedoms while Appellees conduct discovery that will bear directly on the issues of class certification. (PI Tr. at 96.) Class certification briefing will take additional time. The district court's conclusion that the balance of harms favors protecting Appellees' exercise of rights free from retaliation and unconstitutional seizures during the brief period for discovery and class certification was correct and should not be set aside. It is further buttressed by the fact that Appellants face no irreparable injury from the injunction.

## II.   The remaining factors counsel against a stay.

Appellants face no irreparable injury in the absence of a stay. The district court took seriously Appellants' specific objections to an "overly prescriptive injunction" and entered the opposite. (Doc. 85 at 72.) The injunction contains various carveouts, ensuring that it does not hinder in any way officers' ability to act lawfully against violent protesters. *Supra* at Background II. Moreover, the "injunction does nothing to prevent Defendants from continuing to enforce immigration laws." (Doc. 85 at 72.) This is therefore not a situation like *Vazquez Perdomo*, where the Government

was irreparably harmed by being "enjoined by a court from effectuating statutes enacted by the representatives of its people[.]" *See Noem v. Vasquez Perdomo*, 146 S. Ct. 1, 4 (2025); (*see* Mot. at 23). The injunction solely targets unconstitutional conduct and violence aimed at law abiding and peaceful protesters and observers. Appellants "cannot suffer harm from an injunction that merely ends an unlawful practice[.]" *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013).

Appellants' catastrophizing of irreparable harm rings hollow given their statements that "DHS policies already prohibit excessive uses of force in violation of the Fourth Amendment and retaliation on the basis of First Amendment activity." (Mot. at 23.) It also is belied by Appellant Kristi Noem's statement that the injunction order "didn't change anything for how we're operating on the ground."[6] If one takes Appellants at their word, then

_____

[6] *Noem defends Minn. ICE operations, says judge's order "didn't change anything"* at 13:00, Face the Nation and CBS News, YouTube, https://www.youtube.com/watch?v=EdUpUm2c48I (last visited Jan. 22, 2026).
Secretary Noem's public statements can and should be judicially noticed by this Court. Courts may take judicial notice of adjudicative facts at any point in a proceeding, including for the first time on appeal. *See* Fed. R. Evid.

Appellate Case: 26-1105      Page: 26      Date Filed: 01/22/2026 Entry ID: 5600000

the injunction imposes no burden on them whatsoever, let alone "irreparable" harm.

On the other side of the ledger, as the district court found, Appellees face irreparable harm to their constitutional rights in the absence of an injunction. (*See* Doc. 85 at 69-73.) The "status quo" is relevant to whether issuing a stay pending appeal "will substantially injure the other party." *Kansas v. United States*, 124 F.4th 529, 534 (8th Cir. 2024) (citation omitted). The status quo is the situation in Minnesota *before* Appellants began Operation Metro Surge — when protesters and legal observers could exercise their First Amendment rights without fear of retaliation from Appellants. *See id.* If this Court were to grant a stay pending appeal, it would upend the status quo by ratifying Appellants' unconstitutional conduct and denying Appellees a means of holding Appellants accountable for this conduct.

---

201(d); *Gustafson v. Cornelius Co.*, 724 F.2d 75, 79 (8th Cir. 1983). This Court should take judicial notice of recent public statements by senior members of the administration for two reasons. First, the public statements of government officials are facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). Second, these statements were made after the district court's preliminary-injunction order was issued. Under these circumstances, taking judicial notice of these statements "does not undermine the trial court's factfinding authority." *United States v. Wings*, 106 F.4th 793, 795 (8th Cir. 2024).

Appellate Case: 26-1105   Page: 27   Date Filed: 01/22/2026 Entry ID: 5600000

Nor would the public interest be served by permitting Appellants unfettered ability to retaliate against and seize peaceful, unobstructive observers and protesters. The public will be served by ongoing judicial guardrails designed to protect peaceful observers and protesters from dangerous and unnecessary escalation by Appellants during the pendency of this appeal.

### III. Appellants' arguments are best addressed through expedited merits review.

After a month of process before the district court, Appellants now ask this Court to resolve complex legal questions in the context of abbreviated motion practice. *See Nyffeler Constr., Inc. v. Sec'y of Labor*, 760 F.3d 837, 841 (8th Cir. 2014) (describing "administrative panel review" as "summary in character" (quotation omitted)). And issuing a stay may also be the functional equivalent of a reversal. Appellants have not committed to end Operation Metro Surge, yet their actions in Chicago suggest that their presence in Minnesota may be time limited.

Fortunately, there is another way to reach a prompt and full consideration of the merits while preserving the status quo and protecting Appellees' rights. "On its own motion or upon the motion of a party to

expedite the appeal," this Court may accelerate an appeal. 8th Cir. IOP § III(D). This Court has ordered expedited merits consideration in lieu of issuing stays pending appeal several times throughout the years. *See, e.g.*, *Kansas*, 124 F.4th at 534 (denying a motion for stay pending appeal and ordering the clerk "to expedite the briefing schedule for full consideration by a merits panel"); *Craig v. Simon*, 978 F.3d 1043, 1051 (8th Cir. 2020) (same). It should do so here.

## Conclusion

Appellees respectfully request that this Court lift the administrative stay, deny the motion for a stay pending appeal, and set expedited merits briefing.

Respectfully submitted,

Dated: January 22, 2026

By: *s/ Kyle W. Wislocky*

Teresa Nelson (#269736)
Catherine Ahlin-Halverson (#350473)
Alicia Granse (#400771)
**AMERICAN CIVIL LIBERTIES UNION OF MINNESOTA**
P.O. Box 14720
Minneapolis, MN 55414

Appellate Case: 26-1105    Page: 29    Date Filed: 01/22/2026 Entry ID: 5600000

Tel: (651) 529-1692
tnelson@aclu-mn.org
cahlin@aclu-mn.org
agranse@aclu-mn.org

Kyle W. Wislocky (#393492)
Jacob F. Siegel (#399615)
**CIRESI CONLIN LLP**
225 S. 6th St., Suite 4600
Minneapolis, MN 55402
Tel: (612) 361-8233
kww@ciresiconlin.com
jfs@ciresiconlin.com

Robert J. Gilbertson (#22361X)
Caitlinrose H. Fisher (#398358)
Virginia R. McCalmont
(#399496)
Jackson C. Evert (#402214)
Rebecca R. Rogers (#403827)
**FORSGREN FISHER
MCCALMONT DEMAREA
TYSVER LLP**
225 South Sixth St., Suite 1500
Minneapolis, MN 55402
Tel: (612)-474-3310
bgilbertson@forsgrenfisher.com
cfisher@forsgrenfisher.com
vmccalmont@forsgrenfisher.co
jevert@forsgrenfisher.com
rrogers@forsgrenfisher.com

Kevin C. Riach (#389277)
**THE LAW OFFICE OF KEVIN
C. RIACH**

27

125 Main St. SE, Suite 339
Minneapolis, MN 55414
(612) 203-8555
kevin@riachdefense.com

*Attorneys for Appellees*

## Certificate of Compliance

This document complies with the type-volume limit of Fed. R. App. P. 27(d)(2)(A) and 32(a)(5)-(6) because it contains 5,161 words prepared in Book Antiqua 14-point font, a proportionally spaced typeface, using Word for Microsoft 365.

Pursuant to 8th Cir. Local R. 28A(h)(2), I further certify that this document has been scanned for viruses, and is virus free.

Dated: January 22, 2026                    By: *s/ Kyle W. Wislocky*
                                                Kyle W. Wislocky (#393492)
                                                *Attorneys for Appellees*

Appellate Case: 26-1105    Page: 32    Date Filed: 01/22/2026 Entry ID: 5600000

## Certificate of Service

Undersigned counsel hereby certifies that this document was electronically filed by using the CM/ECF system for the United States Court of Appeals for the Eighth Circuit. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

| Dated: January 22, 2026 | By: *s/Kyle W. Wislocky*<br>    Kyle W. Wislocky (#393492)<br>    *Attorneys for Appellees* |
|---|---|