No. 26-1105

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

SUSAN TINCHER, et al.,

Plaintiffs-Appellees,

v.

KRISTI NOEM, in her official capacity as Secretary, U.S. Department
of Homeland Security, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the District of Minnesota

**REPLY IN SUPPORT OF EMERGENCY MOTION FOR A STAY
PENDING APPEAL AND RESPONSE TO PLAINTIFFS' EMERGENCY
MOTION TO IMMEDIATELY LIFT THE ADMINISTRATIVE STAY**

BRETT A. SHUMATE
   *Assistant Attorney General*

YAAKOV M. ROTH
   *Principal Deputy Assistant Attorney
    General*

ERIC D. MCARTHUR
   *Deputy Assistant Attorney General*

MARK R. FREEMAN
AUGUST FLENTJE
BRENNA H. SCULLY
   *Attorneys, Appellate Staff
   Civil Division
   U.S. Department of Justice
   950 Pennsylvania Avenue NW
   Washington, DC 20530
   (202) 598-6735*

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ..................................................................................................1

INTRODUCTION ...........................................................................................................2

ARGUMENT ...................................................................................................................4

I. The Government Is Likely To Succeed On The Merits. ..............................................4

    A.    Plaintiffs Lack Standing To Seek Prospective Relief....................................4

    B.    The Injunction Is Not Workable..................................................................6

    C.    The Injunction Is Overbroad........................................................................9

II. The Remaining Stay Factors Favor The Government...............................................11

CONCLUSION ..............................................................................................................12

CERTIFICATE OF COMPLIANCE .............................................................................14

CERTIFICATE OF SERVICE ......................................................................................15

## INTRODUCTION

The district court improperly relied on five isolated instances of alleged unconstitutional conduct to impose a systemic injunction and install itself as superintendent of DHS law-enforcement operations in Minnesota. That is true for the reasons established in the government's stay motion, any one of which is an independent basis for this Court to stay the injunction.

Plaintiffs defend the order, asserting that it does not prevent the Executive from enforcing immigration law and does no more than prohibit DHS officers from violating the First and Fourth Amendments. Response at 1, 6-7, 19-24. Neither contention is accurate.

The injunction threatens contempt for officers who may make reasonable but incorrect determinations about the meaning of its vague terms during inherently dangerous law-enforcement operations. By potentially subjecting officers to contempt proceedings, the injunction defies separation-of-power principles by restraining how DHS may respond to dangerous, violent, and obstructive interference with their operations and how the Executive enforces immigration law.

The injunction is also far broader than plaintiffs admit. It applies to all DHS officers implementing or responding to protests of Operation Metro Surge anywhere in Minnesota. It protects a purported class of anyone who "observe[s]" Operation Metro Surge. It applies to arrests, traffic stops, and uses of non-lethal force. Doc. 85

at 81-82. And its broad restrictions are not warranted by the six plaintiffs' First and Fourth Amendment claims.

Plaintiffs also reiterate the district court's factual findings, but none rehabilitate the injunction's fundamental legal defects. Response at 3-6, 18-19. If anything, those findings suggest that the court may see contempt whenever DHS officers confront "observers" of Operation Metro Surge. Doc. 85 at 55-68. These myriad problems with the order are now a reality, as plaintiffs allege defendants violated the injunction. Doc. 101.

Plaintiffs' emergency motion to lift the administrative stay changes nothing. First, the "[i]ntervening events"—DHS officers' use of lethal force—have nothing to do with plaintiffs or their claims in this lawsuit. Plaintiffs' Motion at 1-3. Plaintiffs do not allege that they were present. And plaintiffs do not argue that the injunction, had it been in force, would have prohibited the use of lethal force. *Id.* at 4-5. Second, plaintiffs' request is based entirely on speculation about hypothetical future events. *Id.* at 1-4. Thus, lifting the administrative stay would not "prevent irreparable injury to the named plaintiffs," but it would improperly provide relief to an uncertified class of all "observers." *Id.* at 1.

Like three other district courts that improperly attempted to enjoin the Executive's ability to enforce federal law, the court impermissibly "infringe[d] on the separation of powers" by "setting [itself] up as a supervisor of . . . the Executive Branch." Order, *In re Noem*, No. 25-2936 (7th Cir. Oct. 31, 2025).

3

This Court correctly granted an administrative stay and should further stay the injunction pending appeal.

## ARGUMENT

### I. The Government Is Likely To Succeed On The Merits.

#### A. Plaintiffs Lack Standing To Seek Prospective Relief.

Plaintiffs do not contest that the five alleged instances of unconstitutional conduct in December, by themselves, cannot establish standing. Response at 8-9. That makes sense. Article III's "actual-injury requirement would hardly serve [its] purpose" if, as here, five allegations of past injury inflicted by individual law-enforcement officers could permit "imposition of systemwide relief" against an entire agency. *Lewis v. Casey*, 518 U.S. 343, 357, 359 (1996).

Instead, plaintiffs invoke a purported "chill" of Tincher, Noor, and Crenshaw's First Amendment activity. Response at 8-9. But "subjective 'chill'" of First Amendment activity is not a substitute for establishing a "specific present objective harm or a threat of specific future harm." *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (citation omitted). And plaintiffs have failed to show that harm.

As for Biestman, Lee, and Webb's standing, plaintiffs focus on a purported "pattern" of unreasonable traffic stops by DHS officers. Response at 9-10. The district court clearly erred in finding a "pattern" because, as the court's own findings make clear, each alleged traffic stop involved different facts and circumstances. Doc. 85 at 20-21, 45-46. Even if plaintiffs had plausibly alleged such a pattern, that would

4

not establish standing. As *Lyons* makes clear, it is not enough to show that allegedly improper conduct occurs "routinely," or that "the 'odds'" are high that plaintiffs' constitutional rights will be violated again, or even that the conduct was pursuant to a government "policy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06, 108 (1983). Instead, plaintiffs must show that they—not others, like non-party declarants—face a "realistic threat" of the allegedly improper conduct occurring again. *Id.* at 106 n.7. Plaintiffs have failed to carry that burden.

Plaintiffs' most recent allegations that DHS officers stopped and warned Webb after she again followed ICE vehicles on January 21 are irrelevant. Doc. 101. Because "standing is to be determined as of the commencement of the suit," plaintiffs may not "use evidence of what happened after the commencement of the suit to" prove standing. *Park v. Forest Serv.*, 205 F.3d 1034, 1037-38 (8th Cir. 2000) (citation omitted). In any event, these allegations illustrate the injunction's defects: overbroad and categorical prohibitions on DHS officers conducting inherently dangerous law-enforcement operations where the precise factual circumstances are determinative.

Plaintiffs' purported intent to repeat their conduct is similarly insufficient. Response at 10-11. As *Lyons* and its progeny make clear, to establish standing for prospective relief, plaintiffs must show both that (1) they will again encounter ICE officers, and (2) during that encounter, ICE officers will similarly violate the First or Fourth Amendment. 461 U.S. at 105-06. Plaintiffs' "wish to engage in future conduct" at most shows they are likely to encounter ICE officers in the future.

5

*Bernbeck v. Gale*, 829 F.3d 643, 647-48 (8th Cir. 2016). It says nothing about whether ICE officers will injure them in a similar way during those hypothetical future encounters.

### B. The Injunction Is Not Workable.

**1.** Plaintiffs argue that the injunction's terms are not impermissibly vague when read "in the context of" "the specific unconstitutional conduct suffered by the named plaintiffs." Response at 13-14. But that ignores the injunction's text. The court enjoined "[r]etaliating," not just the types of retaliation that Tincher, Noor, and Crenshaw allegedly encountered—arrests and pepper spray. Doc. 85 at 54, 82. Likewise, the injunction protects "persons who are engaging in peaceful and unobstructive protest activity," not just persons engaging in the same conduct as plaintiffs. *Id.* at 82. That vagueness is problematic, because people can come to different conclusions and make reasonable mistakes about whether behavior is "peaceful and unobstructive," particularly during inherently dangerous law-enforcement operations and chaotic protests.

Even those terms that are connected to plaintiffs' specific conduct are not sufficiently defined by the facts of the case. The injunction constrains officers from stopping cars that are "safely following . . . at an appropriate distance." *Id.* But the district court did not find what specific conduct constitutes "safely following" a law-enforcement vehicle or how far is "an appropriate distance."

6

Similarly, plaintiffs miss the mark in arguing that courts can impose injunctions that merely instruct the government to follow the law. Response at 16-17. As this Court explained in *Bennie v. Munn*, "a court can[] enjoin acts that are already illegal" only if the injunction is not "too vague" and gives 'fair and precisely drawn notice of what the injunction actually prohibits.'" 822 F.3d 392, 397 (8th Cir. 2016) (citation omitted).

General admonitions to not violate the law are particularly inappropriate in the law-enforcement context, where officers must determine the meaning of the injunction's terms in dangerous and dynamic circumstances, and any purported violation must be analyzed under the "totality of the circumstances." *Graham v. Connor*, 490 U.S. 386, 396-97 (1989) (citation omitted). The injunction's one-size-fits-all provisions violate these principles.

Plaintiffs recognize that "interpretation is necessary." Response at 12. Yet, they expect officers to do that interpretation, and get it right, while making decisions in dangerous and dynamic situations. That is not correct as a matter of law or common sense. *See Graham*, 490 U.S. at 396-97.

**2.** Nor can plaintiffs surmount the government's separation-of-powers arguments.

First, plaintiffs assert that the injunction will not prevent the Executive from enforcing the Nation's immigration laws. Response at 17, 22. But under the injunction, DHS officers may be held in contempt if they mistakenly determine that

7

the injunction's vague terms permit the officers' response. Adding to that confusion, the injunction imposes restrictions on DHS officers that are both different from and broader than DHS policies, a point plaintiffs ignore. Response at 23. Practically, officers facing this web of legal requirements amid "tense, uncertain, and rapidly evolving" circumstances will naturally hesitate before acting, even when their conduct is well within constitutional limits. *Graham*, 490 U.S. at 396. Thus, the injunction adds potentially disastrous complexity to already dynamic and dangerous situations, further endangering officers and public safety.

And any dispute about the injunction's vague commands will be refereed by the district court under the rubric of contempt proceedings. That is improper too. "Federal courts do not possess a roving commission" to "exercise general legal oversight of the . . . Executive Branch[]." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423-24 (2021). It is this threat of contempt, combined with the attendant court oversight of day-to-day law-enforcement operations and endangerment of officer and public safety, that impairs enforcement of federal law and violates separation-of-powers principles. Plaintiffs simply do not engage with this point. Response at 1-2, 6-7, 17-18, 22-24.

These concerns are likely to manifest—indeed, they have already, as plaintiffs allege defendants violated the injunction, Doc. 101—given the court's clearly erroneous factual findings as to what conduct qualifies as "peaceful and unobstructive": refusing multiple commands to step back from a law-enforcement

8

perimeter; swinging your arms within eight feet of ICE officers during a violent protest; joining a crowd that violently prevented ICE officers from safely leaving a law-enforcement operation; and tailing ICE vehicles during law-enforcement operations. Doc. 85 at 4-26, 56-62, 65-68.

Next, plaintiffs say that the district court did not infringe on the separation of powers because it merely interpreted the law, which is exclusively within the Judiciary's authority. Response at 17-18. That is not what the court did. Instead, the court, without jurisdiction, issued an unworkable and overbroad injunction that impermissibly empowered the court to "exercise general oversight of the Executive Branch['s]" law-enforcement activities in Minnesota. *Trump v. CASA, Inc.*, 606 U.S. 831, 861 (2025). The court had no constitutional or equitable authority to do so. *See id.* at 858 ("[T]he Judiciary does not have unbridled authority to enforce" the Executive's "duty to follow the law."); Order, *In re Noem* (Oct. 31, 2025) (district court issuing similar injunction "infringe[d] on the separation of powers").

### C. The Injunction Is Overbroad.

As the government's stay motion explained, the district court's legal conclusions that ICE officers' conduct violated the First or Fourth Amendment were incorrect even accepting the court's flawed factual findings. Motion at 18-19. As for the First Amendment claims, the obvious alternative explanation for animus toward protected speech is plaintiffs' dangerous, obstructive, or potentially unlawful conduct, which is not protected by the First Amendment. *See Cantwell v. Connecticut*, 310 U.S.

9

296, 308 (1940); *Colten v. Kentucky*, 407 U.S. 104, 109 (1972); *Laney v. City of St. Louis*, 56 F.4th 1153, 1158 (8th Cir. 2023); *Keup v. Sarpy County*, 159 F.4th 533, 537-38 (8th Cir. 2025). And, with respect to the Fourth Amendment claims, reasonable suspicion supported two brief traffic stops of vehicles tailing ICE vehicles during law-enforcement operations. *See United States v. Cortez*, 449 U.S. 411, 417-18 (1981). Plaintiffs do not respond to those legal arguments. Response at 18-19.

Moreover, plaintiffs have failed to explain how their claims would justify the relief ordered here. For example, the injunction prohibits officers from arresting or detaining protestors in retaliation for protected speech "absent a showing of probable cause or reasonable suspicion that the person has committed a crime or is obstructing or interfering with the activities of Covered Federal Officers." Doc. 85 at 82. Yet, that is not the First Amendment standard. *See Molina v. City of St. Louis*, 59 F.4th 334, 341 (8th Cir. 2023); *Laney*, 56 F.4th at 1158. And the injunction categorically prohibits officers from making brief traffic stops if the driver is behaving "safely" and keeps an "appropriate distance." Doc. 85 at 82. But the Fourth Amendment "requires analyzing the 'totality of the circumstance,'" *Barnes v. Felix*, 605 U.S. 73, 80 (2025) (citation omitted), and "is not capable of precise definition or mechanical application," like that the district court imposed, *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).

Thus, the injunction prohibits conduct that would not violate the First or Fourth Amendment, and, relatedly, exposes officers to potential contempt for engaging in lawful conduct. Motion at 18-19.

As for the grant of class-wide relief, plaintiffs cannot explain why, under *A.A.R.P. v. Trump* and *Trump v. CASA*, district courts may enjoin the Executive with respect to a purported class that has not been (and cannot be) certified under Rule 23 barring exceptional circumstances absent here. Response at 19-21. Notably, plaintiffs do not dispute that their claims depend on a fact-specific inquiry for each plaintiff, that the purported class does not satisfy Rule 23's requirements, and that a stay will not risk divesting the court of jurisdiction. *Id.* at 22-23. That renders this case meaningfully different from *A.A.R.P.* Motion at 20-21.

Plaintiffs attempt to analogize to the exigent circumstances in *A.A.R.P.*, reasoning that class-wide relief is necessary because otherwise the court would "leave Minnesotans without remedies for constitutional violations and effectively condone Appellants' unconstitutional practices while this appeal plays out." Response at 21. But *CASA* explicitly rejected the argument that awarding injunctive relief to non-parties is justified as "the only practical way to quickly protect groups from unlawful government action." 606 U.S. at 854. That precludes class-wide relief here.

## II. The Remaining Stay Factors Favor The Government.

As discussed, the injunction immediately and irreparably harms the government by interfering with (1) DHS officers' ability to respond to dangerous, violent, and

11

obstructive interference with law-enforcement operations, and (2) the Executive Branch's ability to enforce the Nation's immigration laws. By doing so, the court violates the separation of powers. Motion at 22-23.

Plaintiffs' cherry-picked comment by Secretary Noem about the injunction only confirms that DHS officers conduct law-enforcement operations pursuant to DHS policies, which prohibit retaliation against First Amendment protected speech and require that any use of force be objectively reasonable. Response at 23; Doc. 47 at 4-5. Nonetheless, by empowering the court to oversee officers' compliance with those policies on pain of contempt, the injunction violates the separation of powers and irreparably harms the government.

Plaintiffs also incorrectly state that the injunction targets only unconstitutional conduct and, therefore, does not irreparably harm the government. Response at 1, 22-23. As explained, the injunction's overbreadth prohibits conduct that would not violate the First and Fourth Amendments, a problem exacerbated by the injunction's vagueness. *Supra* 9-11; Motion at 18-19.

Plaintiffs, by contrast, have not shown that they face any threat of future harm to support standing, much less that they would suffer harm were the injunction stayed pending appeal.

## CONCLUSION

The Court should stay the preliminary injunction pending appeal and deny plaintiffs' motion to lift the administrative stay.

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

YAAKOV M. ROTH
*Principal Deputy Assistant Attorney General*

ERIC D. MCARTHUR
*Deputy Assistant Attorney General*

MARK R. FREEMAN
AUGUST FLENTJE
 /s/ *Brenna H. Scully*
BRENNA H. SCULLY
*Attorneys, Appellate Staff*
*Civil Division*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 880-6114*
*Brenna.scully@usdoj.gov*

JANUARY 2026

13

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,536 words. This reply also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

Pursuant to Circuit Rule 28A(h)(2), I further certify that the reply has been scanned for viruses, and the reply is virus free.

*/s/ Brenna H. Scully*
Brenna H. Scully

## CERTIFICATE OF SERVICE

I hereby certify that on January 25, 2026, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. Service will be accomplished by the appellate CM/ECF system on all counsel of record.

> */s/ Brenna H. Scully*
> Brenna H. Scully