Susan Tincher, on behalf of themselves and other similarly situated individuals; John Biestman, on behalf of themselves and other similarly situated individuals; Janet Lee, on behalf of themselves and other similarly situated individuals; Lucia Webb, on behalf of themselves and other similarly situated individuals; Abdikadir Noor, on behalf of themselves and other similarly situated individuals; Alan Crenshaw, on behalf of themselves and other similarly situated individuals

*Plaintiffs - Appellees*

v.

Kristi Noem, Secretary, U.S. Department of Homeland Security (DHS), in their official capacities; Todd M. Lyons, Acting Director, U.S. Immigration and Customs Enforcement (ICE), in their official capacities; Marcos Charles, Acting Executive Associate Director, Enforcement and Removal Operations (ERO), ICE, in their official capacities; David Easterwood, Acting Field Office Director, ERO, ICE Saint Paul Field Office, in their official capacities; John Condon, Acting Executive Associate Director, Homeland Security Investigations (HSI), in their official capacities; Department of Homeland Security; Unidentified Federal Agencies, in their official capacities; Unidentified Federal Agents, in their official capacities

*Defendants - Appellants*

------------------------------

State of Alabama; State of Alaska; State of Arkansas; State of Florida; State of Georgia; State of Idaho; State of Indiana; State of Iowa; State of Kansas; State of Louisiana; State of Mississippi; State of Missouri; State of Montana; State of Nebraska; State of New Hampshire; State of North Dakota; State of Oklahoma;

State of South Carolina; State of South Dakota; State of Texas; State of West Virginia

*Amici on Behalf of Appellant(s)*

------------

Appeal from United States District Court
for the District of Minnesota

------------

Submitted: January 25, 2026
Filed: January 26, 2026
[Published]

------------

Before GRUENDER, SHEPHERD, and STRAS, Circuit Judges.

------------

PER CURIAM.

The district court entered a preliminary injunction with respect to federal immigration-enforcement operations in Minnesota. The injunction is unlikely to survive the government's interlocutory appeal, *see* 28 U.S.C. § 1292(a)(1), so we stay it pending a final decision in this case.

Six individuals who have "observed" and protested Operation Metro Surge, the ongoing immigration-enforcement effort in the Twin Cities, sued on behalf of "[a]ll persons who do or will in the future record, observe, and/or protest against" it. The preliminary injunction covers all of them and limits what federal agents who take part in the operation or respond to the protests can do while carrying out their official duties. Included in the district court's order are prohibitions on "[r]etaliating against" anyone "engag[ed] in peaceful and unobstructive protest activity" and stopping vehicles without "reasonable articulable suspicion that [the occupants] are forcibly obstructing or interfering with" immigration-enforcement activities.

For at least two reasons, the government has made "a strong showing" that its challenge to the injunction "is likely to succeed on the merits." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted). First, the grant of relief to such a broad uncertified class is just a universal injunction by another name. *See Trump v. CASA, Inc.*, 606 U.S. 831, 856 (2025) (holding that "federal courts lack authority to issue them"). Even if "courts may issue temporary relief to a putative class," this one has *no* chance of getting certified. *A.A.R.P. v. Trump*, 605 U.S. 91, 98 (2025) (per curiam). And overlooking the difficulties of certification, as the Supreme Court did in *A.A.R.P.*, is not necessary "to preserve our jurisdiction." *Id.* at 97.

We accessed and viewed the same videos the district court did. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007) (explaining that an appellate court should "view[] the facts in the light depicted by the videotape"). What they show is observers and protestors engaging in a wide range of conduct, some of it peaceful but much of it not. They also show federal agents responding in various ways. Even the named plaintiffs' claims involve different conduct, by different officers, at different times, in different places, in response to different behavior. These differences mean that there are no "questions of law or fact common to the class," Fed. R. Civ. P. 23(a)(2), that would allow the court to decide all their claims in "one stroke," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *cf. A.A.R.P.*, 605 U.S. at 97–98 (issuing a temporary injunction because every member of the putative class needed to receive the "same" constitutionally adequate notice before removal from the country).

Second, in addition to being too broad, the injunction is too vague. *See* Fed. R. Civ. P. 65(d)(1)(B)–(C) (explaining that an injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or required"). Directions not to "[r]etaliat[e] against persons who are engaging in peaceful and unobstructive protest activity" or "[s]top[] or detain[] drivers . . . where there is no reasonable articulable suspicion" are simply commands to "obey the law," which are "not specific enough." *Daniels v. Woodbury County*, 742 F.2d 1128, 1134 (8th Cir. 1984) (explaining that such injunctions do not provide "a clear idea

of what conduct is prohibited"); *see Sessler v. City of Davenport*, 990 F.3d 1150, 1156 n.3 (8th Cir. 2021) (deciding that a prohibition on "restricting and limiting [the plaintiff's] rights to peacefully share his message" would be "an obey-the-law injunction"); *Elend v. Basham*, 471 F.3d 1199, 1210 (11th Cir. 2006) (declining to order an injunction to "ensure there's no violation of the First Amendment" because it would "merely command the [defendant] to obey the law").

Even the provision that singles out the use of "pepper-spray or similar nonlethal munitions and crowd dispersal tools" requires federal agents to predict what the district court would consider "peaceful and unobstructive protest activity." The videos underscore how difficult it would be for them to decide who has crossed the line: they show a fast-changing mix of peaceful and obstructive conduct, with many protestors getting in officers' faces and blocking their vehicles as they conduct their activities, only for some of them to then rejoin the crowd and intermix with others who were merely recording and observing the scene. *See Bernini v. City of St. Paul*, 665 F.3d 997, 1003 (8th Cir. 2012) (acknowledging "the practical dilemma faced by officers responsible for reacting to large group activity"). A wrong call could end in contempt, yet there is little in the order that constrains the district court's power to impose it. *See Schmidt v. Lessard*, 414 U.S. 473, 476 n.2 (1974) (warning that "[t]he judicial contempt power is a potent weapon" that should not be "founded upon a decree too vague to be understood" (citation omitted)). "[F]ederal courts do not exercise general oversight of the Executive Branch," *CASA*, 606 U.S. at 861, and the structural injunction imposed here, given its breadth and vagueness, is too big a step in that direction.

The remaining considerations also favor granting a stay. *See Nken*, 556 U.S. at 434. "[M]ost critical[ly]," to the extent the injunction's breadth and vagueness cause federal agents to hesitate in performing their lawful duties, it threatens to irreparably harm the government and undermine the public interest. *Id.*; *see CASA*, 606 U.S. at 861 ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." (alteration in original) (citation omitted)); *see also Trump v. Int'l Refugee Assistance*

-4-

*Project*, 582 U.S. 571, 581 (2017) (recognizing "the Government's interest in enforcing [the law]"). On the other side of the scale, the risk of "substantial[] injur[y]" from staying the injunction is low when all it says is to follow the law. *Nken*, 556 U.S. at 434 (citation omitted); *see Org. for Black Struggle v. Ashcroft*, 978 F.3d 603, 609 (8th Cir. 2020) (noting that "a stay [that] preserves the status quo" is unlikely to harm other parties (quoting *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1284 (11th Cir. 2020))).

We accordingly grant the government's emergency motion for a stay pending appeal, deny the plaintiffs' emergency motion to lift the administrative stay as moot, and grant their request for expedited merits briefing.

GRUENDER, Circuit Judge, concurring in part and dissenting in part.

I concur in the Court's order except in two respects.

First, I do not believe the Government has made a "strong showing" that the district court erred in granting preliminary injunctive relief to plaintiffs' putative class. Although certification of plaintiffs' class under Rule 23 would be unlikely, the Supreme Court explained last term that courts "need not decide whether a [putative] class should be certified" to grant preliminary class-wide relief. *See A.A.R.P v. Trump*, 605 U.S. 91, 98 (2025). I do not read the Court's decision one month later in *Trump v. CASA*, 606 U.S. 831 (2025) as abrogating that instruction. Although there may be tension between *A.A.R.P.* and *CASA* on the issue of putative class relief, we are not the court to resolve it, especially not on an emergency motion for a stay pending appeal. Therefore, I would not grant the Government's motion on that basis.

Second, I would reject the Government's motion and lift the administrative stay as to the portion of the district court's injunction that prohibits Covered Federal Agents from "[u]sing pepper-spray or similar nonlethal munitions and crowd

-5-

Appellate Case: 26-1105    Page: 5    Date Filed: 01/26/2026 Entry ID: 5601132

dispersal tools against persons who are engaging in peaceful and unobstructive protest activity."

That directive is not an improperly vague "obey the law" injunction and should not be stayed pending appeal. "Reading the injunction in the context of the facts and circumstance of this case," *Heartland Acad. Cmty. Church v. Waddle*, 427 F.3d 525, 536 (8th Cir. 2005), the Government has not demonstrated that trained federal agents are unlikely to understand how to comply with an order not to "us[e] pepper-spray or similar nonlethal munitions and crowd dispersal tools" against persons "engaging in peaceful and unobstructive protest activity." Accordingly, I would deny the Government's motion for a stay pending appeal and lift the administrative stay as to that portion of the district court's injunction.

_____

Appellate Case: 26-1105    Page: 6    Date Filed: 01/26/2026 Entry ID: 5601132