No. 26-1105

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

**SUSAN TINCHER**, *et al.*,
Plaintiffs - Appellees,

**v.**

**KRISTI NOEM**, *et al.*,
Defendants - Appellants.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

### *AMICUS CURIAE* BRIEF OF FEDERATION FOR AMERICAN IMMIGRATION REFORM IN SUPPORT OF DEFENDANTS-APPELLANTS

CHRISTOPHER J. HAJEC
MATT A. CRAPO
Federation for American Immigration Reform
25 Massachusetts Ave., NW, Suite 330
Washington, DC 20001
Telephone: (202) 328-7004
chajec@fairus.org
mcrapo@fairus.org

Attorneys for *Amicus Curiae*
Federation for American Immigration Reform

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, *amicus curiae* Federation for American Immigration Reform makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

<u>/s/ Christopher J. Hajec</u>

Appellate Case: 26-1105    Page: 2    Date Filed: 02/19/2026 Entry ID: 5609723

# CONTENTS

CORPORATE DISCLOSURE STATEMENT ......................................................... i

TABLE OF AUTHORITIES .................................................................... iii

INTEREST OF *AMICUS CURIAE* ............................................................1

SUMMARY OF ARGUMENT ..................................................................1

ARGUMENT ...............................................................................3

   I.   Plaintiffs lack standing .....................................................5

   II.  This Court should avoid applying higher standards than those required by the Fourth Amendment ....................................................7

CONCLUSION ............................................................................11

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

Appellate Case: 26-1105    Page: 3    Date Filed: 02/19/2026   Entry ID: 5609723

# TABLE OF AUTHORITIES

**CASES**

*Bernini v. City of St. Paul,*
    665 F.3d 997 (8th Cir. 2012)..................................................................9, 10

*City of Los Angeles v. Lyons,*
    461 U.S. 95 (1983).................................................................................6

*Clinton v. Garrett,*
    49 F.4th 1132 (8th Cir. 2022)..................................................................8

*Kampas v. City of St. Louis,*
    157 F.4th 937 (8th Cir. 2025)..................................................................9

*Kansas v. Glover,*
    589 U.S. 376 (2020)....................................................................... 8, 9, 10

*Minn. Deer Farmer's Ass'n v. Strommen,*
    146 F.4th 664 (8th Cir. 2025)..................................................................5

*Navarette v. California,*
    572 U.S. 393 (2014).................................................................................7

*O'Shea v. Littleton,*
    414 U.S. 488 (1974).................................................................................6

*Rinne v. Camden County,*
    65 F.4th 378 (8th Cir. 2023)....................................................................6

*TransUnion LLC v. Ramirez,*
    594 U.S. 413 (2021).................................................................................5

*United States v. Cortez,*
    449 U.S. 411 (1981)..............................................................................7, 8

*United States v. Rederick,*
    65 F.4th 961 (8th Cir. 2023)....................................................................8

Appellate Case: 26-1105    Page: 4    Date Filed: 02/19/2026  Entry ID: 5609723

*Wallace v. ConAgra Foods, Inc*.,
 747 F.3d 1025 (8th Cir. 2014)....................................................................5

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend IV .....................................................................................7

iv

# INTEREST OF *AMICUS CURIAE*[1]

*Amicus curiae* Federation for American Immigration Reform (FAIR) is a nonprofit corporation and membership organization that was founded in 1979 and has its principal place of business in Washington, D.C. FAIR's mission is to advocate for immigration policy that is in America's best interest. FAIR has been involved in more than 100 legal cases since 1980, either as a party or *amicus curiae*, with the aim of advancing this mission.

The decision in this case will have a substantial impact on the tools available to the executive branch of the federal government in dealing efficiently, fairly, and safely with an illegal alien population estimated to exceed 18 million people in the United States. *Amicus* FAIR has direct and vital interests in defending the executive branch's authority to address the current illegal alien crisis.

## SUMMARY OF ARGUMENT

The district court below joined a growing list of courts that have improperly curtailed how federal immigration officials may respond to protests, riots, and threats of violence against officials. In line with the results on appeal in most of these cases, the order in this case should be reversed.

---

[1] All parties consent to the filing of this *amicus* brief. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

1

First, the risk of future arrest, or mere allegations that federal officials will interfere with constitutional rights, has never been sufficient to confer standing, even if the plaintiff has been arrested in the past. Instead, to have standing, plaintiffs must demonstrate an imminent and substantial risk of future harm. Plaintiffs here, by their own admissions, fear future arrest based on nothing more than suspicions that immigration officials could employ methods against them that they contend are unlawful. It is clearly established in precedent of both this Circuit and the Supreme Court that such fear does not imply imminent, concrete harm sufficient to confer standing.

Second, on the merits, the order below granting a preliminary injunction, and its reasoning, is contrary to longstanding precedent of both the Supreme Court and circuit courts addressing how federal officials may interact with those impeding federal officials in the execution of federal law. Under this precedent, persons in a crowd that includes violent lawbreakers are not entitled to individualized assessments of criminality when it comes to the implementation of crowd-control measures; officers may treat the crowd as a unit. As the Supreme Court recently warned, when a court enjoins measures to control violent crowds by requiring such assessments, or seeks otherwise to micromanage officials in the conduct of their responsibilities, the requirements imposed chill the enforcement of federal immigration law. Because the district court improperly determined that

2

Plaintiffs possessed standing, and then made unwarranted additions to the Fourth Amendment standards articulated by the Supreme Court and this Circuit, its order should be vacated.

## ARGUMENT

Although Plaintiffs and the district court like to style the events in Minnesota as protests, there is sufficient reporting to suggest that groups of individuals are actively interfering with federal officials in the conduct of their jobs. The Attorney General for the State of Arizona, for example, suggested that citizens could use deadly force to oppose ICE,[2] and agitators on social media have called for violence against ICE agents.[3] Rioters damaged property and assaulted law enforcement in Minnesota when they falsely believed that ICE agents were staying at a certain hotel.[4] Individuals intent on obstructing the enforcement of

---

[2] Michael D. Carroll, *Arizona AG Suggests Residents May Gun Down Masked ICE Agents If They Felt Threatened Under State Law*, The Mirror US, Jan. 23, 2026, https://www.themirror.com/news/us-news/arizona-ice-agent-public-guns-1635970.

[3] Joseph A. Wulfsohn, *Liberal Social Media Platform Bluesky Flooded with Users Calling for Violence Against ICE Agents*, Fox News, January 26, 2026, https://www.foxnews.com/media/liberal-social-media-platform-bluesky-flooded-users-calling-violence-against-ice-agents.

[4] Hudson Crozier and Jorge Ventura, *Cops Unleashed on Anti-ICE Rioters Near Minneapolis*, The Daily Caller, January 27, 2026, https://dailycaller.com/2026/01/27/minnesota-riot-cops-unleashed-anti-ice-protests-deportations-bovino/.

3

federal immigration law are tracking license plate numbers and coordinating their obstructive conduct through private messaging platforms.[5]

Individuals are using vehicles, too, in an effort to obstruct immigration enforcement. This use of vehicles goes beyond mere cataloging of license plates and trailing suspected immigration enforcement vehicles and includes using vehicles to interfere with immigration officials while they are conducting operations.[6]

Plaintiffs in this case lack standing, because they fail to show that they face imminent harm from future law enforcement activity. Also, while some Plaintiffs may be lawfully exercising their First Amendment rights to protest ICE activities in Minnesota, there is ample evidence that they do so alongside a significant number of individuals who are engaging in criminal conduct that both impedes

---

[5] Kyle Stokes, How Minnesota's Rapid Responders Track ICE Agents In Real Time, Axios, January 26, 2026, https://www.axios.com/local/twin-cities/2026/01/26/ice-watch-rapid-response-minnesota-network, Sarah Bedford, Liberal Activists Use Aggressive 'ICE Watch' Tactics to Target Federal Officers in Minneapolis, Washington Examiner, January 9, 2026, https://www.washingtonexaminer.com/news/4412995/liberal-activists-aggressive-ice-watch-tactics-target-federal-officers-minneapolis/.

[6] E.g. Rachel Leingang and Maanvi Singh, 'Make No Mistake, This is an Occupation': ICE's Deadly Presence Casts Long Shadow Over Minneapolis, The Guardian, January 17, 2026, https://www.theguardian.com/us-news/2026/jan/17/minneapolis-twin-cities-ice-dispatch; Alec Ashe, The Blind Rage of Anti-ICE Protests: Delusional Activism In The Age of Enforcement, American Thinker, January 30, 2026, https://www.americanthinker.com/articles/2026/01/the_blind_rage_of_anti_ice_protests_delusional_activism_in_the_age_of_enforcement.html.

4

federal officials and represents threats to their life and safety. The district court's injunction makes it nearly impossible for federal officials to respond to this unlawful activity, or to protect themselves.

## I. Plaintiffs lack standing.

The district court erred when it determined that Plaintiffs established standing by pleading fear of future harm. Just because Plaintiffs encountered—or alleged they encountered—federal officials in the past, it cannot be concluded that they are likely to encounter them in the future. Just because Plaintiffs allege that federal officials used improper methods to arrest them or dispel crowds in the past, it cannot be concluded that federal officials will use those same tactics in the future. To establish standing to seek injunctive relief, a plaintiff must demonstrate "a risk of future harm" that "is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021), *Minn. Deer Farmer's Ass'n v. Strommen*, 146 F.4th 664, 669 (8th Cir. 2025) (same), *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1031 (8th Cir. 2014) ("Time and again the Supreme Court has reminded lower courts that speculation and conjecture are not injuries cognizable under Article III"). "[P]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages." *TransUnion*, 594 U.S. at 431.

5

"Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects." *Rinne v. Camden County*, 65 F.4th 378, 386 (8th Cir. 2023) (citation modified) *citing O'Shea v. Littleton*, 414 U.S. 488, 502 (1974). In a case nearly on point with this one, *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), the plaintiff was seized by police officers and subjected to a "chokehold," which caused a loss of consciousness and damage to the plaintiff's larynx. 461 U.S. at 97-98. Lyons sought an injunction barring the police department from using chokeholds. The Supreme Court held that Lyons "presumably" had standing to seek damages against the officers and the City of Los Angeles, but that in the absence of a realistic threat of future injury Lyons could not "demonstrate a case or controversy with the City that would justify the equitable relief sought." *Id.* at 105.

Even if Plaintiffs claim that they will continue protesting ICE, the mere prospect of interaction with federal officials is insufficient to create standing. From the past conduct they adduce, Plaintiffs cannot show that federal officials will use crowd control methods Plaintiffs claim are improper, stop and detain them on bases Plaintiffs claim are insufficient, or otherwise interfere with their claimed rights.

6

In sum, the district court erred by concluding that Plaintiffs' alleged past harm was sufficient to establish standing. Because Plaintiffs failed to show that they are likely to possess standing, the district court's injunction should be vacated.

## II. This Court should avoid applying higher standards than those required by the Fourth Amendment.

Here, Plaintiffs allege, and the district court accepted, that the presence of federal immigration officials, and those officials' use of crowd control measures, stifles the exercise of their First Amendment rights. Add.042-47. Plaintiffs further allege, and the district court accepted, that any efforts to dispel them, or restrain the ability of others among them to interfere with federal immigration enforcement, violates their constitutional rights. Such efforts include the use of crowd control measures such as pepper spray or "similar nonlethal munitions and crowd dispersal tools." Add.082.

As discussed above, and contrary to the Plaintiffs' assertions, not all the activities in Minnesota were peaceable. The district court's order, though, could be construed as limiting federal officials' ability to respond to the violent crowds so long as some members of the crowd *could* claim to be lawfully protesting.

Under the Fourth Amendment, searches and seizures must be "reasonable." U.S. Const. amend IV. In applying this reasonableness standard, courts must look to the "totality of the circumstances—the whole picture," *United States v. Cortez*, 449 U.S. 411, 417-18 (1981), *Navarette v. California*, 572 U.S. 393, 397 (2014),

7

*United States v. Rederick*, 65 F.4th 961, 965 (8th Cir. 2023), while also accounting for officers' training and experience in drawing rational inferences from particular facts. *Clinton v. Garrett*, 49 F.4th 1132, 1140 (8th Cir. 2022) ("[W]e allow officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person") (internal quotation marks omitted) *citing Cortez*, 449 U.S. at 417.

As the Supreme Court elaborated in *Kansas v. Glover*, 589 U.S. 376 (2020):

"Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Prado Navarette v. California*, 572 U. S. 393, 397, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014) (quotation altered); *United States v. Sokolow*, 490 U. S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989).

Because it is a "less demanding" standard, "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." *Alabama v. White*, 496 U. S. 325, 330, 110 S. Ct. 2412, 110 L. Ed. 2d 301 (1990). The standard "depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Navarette*, *supra*, at 402, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (quoting *Ornelas v. United States*, 517 U. S. 690, 695, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996) (emphasis added; internal quotation marks omitted)). Courts "cannot reasonably demand scientific certainty where none exists." *Illinois v. Wardlow*, 528 U. S. 119, 125, 120 S. Ct. 673, 145 L. Ed. 2d 570 (2000). Rather, they must permit officers to make "commonsense judgments and inferences about human behavior." *Ibid.*; see also *Navarette*, *supra*, at 403, 134 S. Ct. 1683, 188

8

L. Ed. 2d 680 (noting that an officer "'need not rule out the possibility of innocent conduct'").

589 U.S. at 380-81.

Where a crowd surrounds federal law enforcement with the objective, as described above, of preventing the enforcement of federal immigration law, federal officers clearly have probable cause to believe that some members of the crowd are engaging in, or will engage in, criminal conduct. It matters little that others in the crowd are merely exercising their First Amendment rights, as they can provide cover for those engaging in criminal conduct. *E.g. Kampas v. City of St. Louis*, 157 F.4th 937, 943-44 (8th Cir. 2025) (holding that law enforcement is justified in arresting members of a crowd trespassing on a highway), *Bernini v. City of St. Paul*, 665 F.3d 997, 1003-04 (8th Cir. 2012) (holding that where individuals in a crowd act unlawfully and then attempt to blend back into the crowd, law enforcement may treat the entire crowd as a unit). Where a crowd develops, the large number of people present and engaging in criminal conduct makes "a probable cause determination as to each individual… 'practically impossible.'" *Kampas*, 157 F.4th at 943-44.

The district court's preliminary injunction is contrary to this precedent. The preliminary injunction prohibits the federal government from "retaliating," "arresting or detaining," or "using pepper spray or other similar nonlethal munitions and crowd dispersal tools" against "peaceful and unobstructive protest

9

activity." Add.082. It is clear, however, that, where a crowd is involved, officials need only reasonably conclude that some of the crowd's members are violating the law in order to control the entire crowd as a unit. *Berini*, 665 F.3d at 1004-05.

By enjoining the government's ability to control crowds, the preliminary injunction effectively chills the enforcement of federal law in ways the Supreme Court warned against. *See Glover*, 589 U.S. at 380-81 ("Courts cannot reasonably demand scientific certainty . . . where none exists. Rather, they must permit officers to make commonsense judgments and inferences about human behavior.") (quotations and citations omitted).

This Court should not uphold a standard beyond that required by the Fourth Amendment. By applying a higher standard, the district court erred in concluding that Plaintiffs were likely to succeed on the merits. This Court should therefore vacate the district court's order.

Appellate Case: 26-1105    Page: 15    Date Filed: 02/19/2026 Entry ID: 5609723

## CONCLUSION

For the reasons stated herein, the judgment of the district court should be reversed.

Dated: February 13, 2026                    Respectfully submitted,

                                            /s/ Christopher J Hajec
                                            Christopher J. Hajec
                                            Matt A. Crapo
                                            Federation for American Immigration Reform
                                            25 Massachusetts Ave., NW, Suite 330
                                            Washington, DC 20001
                                            Telephone: (202) 328-7004

                                            Attorneys for *Amicus Curiae*
                                            Federation for American Immigration Reform

Appellate Case: 26-1105     Page: 16     Date Filed: 02/19/2026 Entry ID: 5609723

# CERTIFICATE OF COMPLIANCE

1.    The foregoing brief complies with the type-volume limitation of FED. FED. R. APP. P. 29(a)(5) because this brief contains 2,292 words, including footnotes, but excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

3.    Pursuant to Local Rule 28A(h)(2), the undersigned attorney certifies that the brief has been scanned for viruses and, to the best of his ability and technology, believes it is virus free.

/s/ Christopher J. Hajec

## CERTIFICATE OF SERVICE

I certify that on February 13, 2026, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system. All parties were served electronically through the CM/ECF system.

/s/ Christopher J. Hajec