No. 26-1105

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

———————————

SUSAN TINCHER, et al.,

Plaintiffs-Appellees,

v.

KRISTI NOEM, in her official capacity as Secretary, U.S. Department
of Homeland Security, et al.,

Defendants-Appellants.

———————————

On Appeal from the United States District Court
for the District of Minnesota

———————————

**OPPOSITION TO REQUEST FOR REMAND**

———————————

BRETT A. SHUMATE
  *Assistant Attorney General*
YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney
  General*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*

MARK R. FREEMAN
AUGUST FLENTJE
BRENNA H. SCULLY
  *Attorneys, Appellate Staff
  Civil Division
  U.S. Department of Justice
  950 Pennsylvania Avenue NW
  Washington, DC 20530
  (202) 880-6114*

## INTRODUCTION

The government respectfully opposes plaintiffs' request that the Court remand for the district court to vacate the preliminary injunction as moot. If the Court believes that the injunction may be moot, it should itself vacate the preliminary injunction before remanding, as the Seventh Circuit recently vacated a similar preliminary injunction before dismissing the appeal in *Chicago Headline v. Noem*, No. 25-3023 (7th Cir.). And if the Court grants the request, it should do so on the ground that the entire case is now moot, such that there is no basis for plaintiffs to seek (or the district court to grant) a new injunction predicated on the same challenged conduct by federal officers.

By its plain terms, the preliminary injunction is not moot. Nearly 500 Department of Homeland Security (DHS) officers remain on detail in the Twin Cities metro area. R. Doc. 255, at 3. Their "respon[ses] to protests that arise in response to Operation Metro Surge" would be restrained by the preliminary injunction. R. Doc. 85, at 81. So would their responses to people recording, observing, and/or protesting DHS's "related operations." *Id.* Thus, the preliminary injunction, had it not been stayed by this Court, would continue to restrict those detailed officers.

The district court incorrectly determined that the preliminary injunction is moot based on semantics. In the district court's view, if DHS officers are not explicitly functioning pursuant to orders officially called "Operation Metro Surge," the injunction has no effect. But that only invites litigants to play word games. Under

the district court's indicative ruling, everything depends on what name the government gives to its immigration-enforcement operations. It is difficult to imagine that plaintiffs or the district court would accept that logic if the tables were turned. If this Court had denied the government's stay motion and the government had then tried to argue that the preliminary injunction became moot because DHS no longer used the name "Operation Metro Surge" to describe its operations, plaintiffs undoubtedly would have opposed that argument and the district court would have swiftly rejected it.

Normally, of course, the government would not oppose the dismissal of an injunction against its operations on mootness grounds. Here, however, plaintiffs contend *both* that this preliminary injunction is moot *and* that they are entitled to pursue a new injunction predicated on the same challenged conduct. If plaintiffs are correct that there exists a justiciable controversy between the parties that could support an injunction regulating DHS officers' conduct, then for the same reasons the existing preliminary injunction is not moot and the government is entitled to seek this Court's prompt review of the flawed premises of plaintiffs' claims. Conversely, if this Court concludes that the winddown of Operation Metro Surge obviated any prospective controversy over the lawfulness of DHS officers' conduct, then the entire case should be dismissed as moot, not just the preliminary injunction.

## ARGUMENT

The Court should deny plaintiffs' request to remand. Fed. R. Civ. P. 62.1(c).

1.     Even though DHS has significantly reduced its immigration enforcement presence in Minnesota, the injunction continues to have effect because nearly 500 DHS officers are still currently detailed to the Twin Cities metro area. R. Doc. 255, at 3. The preliminary injunction restrains DHS "officers and agents responding to protests that arise in response to Operation Metro Surge." R. Doc. 85, at 81. The preliminary injunction also applies to "all persons who do or will in the future record, observe, and/or protest . . . related operations." *Id.* Ongoing immigration enforcement in Minnesota conducted by the detailed officers is, at a minimum, "related" to Operation Metro Surge. Thus, the preliminary injunction would continue to apply to individuals recording, observing, and/or protesting those enforcement operations and restrain how detailed officers respond to those activities. Because the injunction would restrain detailed officers responding to both types of protests, the preliminary injunction would still have an effect.

The district court disagreed, explaining that the "related operations" language is "clearly tie[d]" to Operation Metro Surge and "Defendants' reading would vitiate any temporal limit whatsoever on the Injunction." R. Doc. 246, at 7. The first conclusion is far from clear. As defendants have consistently argued before this Court, the injunction's terms are hopelessly vague. The "related operations" term is just one more example of how the injunction's vagueness prevents defendants from being able to determine what conduct is restricted by the injunction.

Regardless, defendants' reading of "related operations" is supported by the district court's explanation of the injunction's scope.  The court explained that it narrowed plaintiffs' requested relief to avoid "hamper[ing] totally unrelated activities of other federal law enforcement offices throughout Minnesota" like "regularly conducted business of Border Patrol agents on the northern border, Coast Guard officers on the Great Lakes, customs officials at airports, and other federal officials doing their work unrelated to Operation Metro Surge."  R. Doc. 85, at 79.  That language only supports defendants' understanding that "related operations" would include the nearly 500 officers detailed to the Twin Cities metro area as a result of the Operation Metro Surge winddown because those officers are not engaged in the types of "regularly conducted business" the district court listed as excluded from the injunction.

Defendants' interpretation would not "vitiate any temporal limit" on the injunction.  R. Doc. 246, at 7.  DHS officers who remain on detail to the Twin Cities metro area as a result of the Operation Metro Surge winddown and who "respond[] to protests that arise in response to Operation Metro Surge" or respond to persons who "record, observe and/or protest . . . related operations" would be restricted by the injunction.  R. Doc. 85, at 81.  To the extent the district court views that as a boundless decree, that only illustrates the injunction's flaws, not its mootness.

   **2.**   The district court's indicative ruling suffers from a more fundamental flaw:  a semantic quibble about what DHS conduct is labeled "Operation Metro

Surge." In the district court's view, if DHS officers continue to engage in the conduct challenged by Plaintiffs, but they do so pursuant to directives that are no longer explicitly called "Operation Metro Surge," the injunction does not apply. R. Doc. 246, at 6-7. That cannot be right. *Cf. Mil. Ord. of Purple Heart of USA v. Sec'y of Veterans Affs.*, 580 F.3d 1293, 1295–96 (Fed. Cir. 2009) (holding that appeal was not mooted by government withdrawing document that implemented challenged policy and continuing the same policy under a different name).

And, to be clear, plaintiffs insist that DHS officers are continuing to engage in the same alleged misconduct. That is why plaintiffs filed an amended complaint that doubles down on the legal theories in the preliminary injunction and seeks sweeping class-wide injunctive relief on essentially the same legal grounds, only with additional allegations and plaintiffs. *Compare* R. Doc. 136, at 59-86, *with* R. Doc. 85, at 48-68; *see also* R. Doc. 136, at 3-5, 59-97.

**3.**     To the extent the Court believes that the preliminary injunction may be moot, it should itself vacate the injunction before remanding, like the Seventh Circuit's recent decision vacating a similar injunction before dismissing the appeal in *Chicago Headline Club v. Noem*. *See* Order, *Chicago Headline Club v. Noem*, No. 25-3023 (7th Cir. Mar. 5, 2026).

In that case, plaintiffs sought—and the district court awarded—sweeping, class-wide preliminary injunctive relief enjoining DHS officers' responses to protestors in Chicago. *Id.* at 2-4. After the Seventh Circuit stayed the injunction

pending appeal and the government filed its opening brief, plaintiffs "unexpected[ly] . . . moved to dismiss the case with prejudice before the district court." *Id.* at 6. But the district court "dismissed the case *without* prejudice—even though plaintiffs had asked for dismissal *with* prejudice." *Id.* at 7. And the court "*sua sponte* de-certified the class." *Id.* The government then moved to voluntarily dismiss its appeal while "flagg[ing] . . . concerns" about the procedurally irregular dismissal order. *Id.*

After noting that it "grants such motions as a matter of course," the Seventh Circuit explained that "the extraordinary circumstances of this case require us to review this order before dismissing the appeal." *Id.* at 7-8. And even though subsequent factual developments "strongly suggest[ed]" that the "case [was] moot," the court vacated the preliminary injunction before dismissing the appeal. *Id.* at 10.

In the per curiam opinion, the majority held that the injunction was "overbroad" and "constitutionally suspect." *Id.* The majority specifically emphasized that the injunction "impermissibly infringes on separation of powers principles" by "establish[ing] the district court as the supervisor of all Executive Branch activity in the city of Chicago—a role another federal court of appeals has found problematic." *Id.* at 11 (discussing *Tincher v. Noem*, 164 F.4th 1097 (8th Cir. 2026)). The majority also expressed skepticism of the district court's conclusion "that all the lead plaintiffs had Article III standing at a high level of generality"—a conclusion that "appears to be in substantial tension" with *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). *Id.* at 12-13.

And the majority acknowledged as "especially worrisome" the district court's finding that "the government's witnesses [were] categorically not credible." *Id.* at 12.

The Seventh Circuit concluded that because plaintiffs "quickly and voluntarily withdrew their case" after the court stayed the preliminary injunction pending appeal, "[v]acatur is . . . proper to ensure the district court's injunction order does not affect future litigation." *Id.* at 10-11. The court was concerned that "any class members or the lead plaintiffs could refile these claims tomorrow. They could ask the district court to reinstate a near-identical preliminary injunction, adopting the facts and legal reasoning from the district court's order." *Id.* at 11.

Those same concerns are present here. The district court issued sweeping class-wide injunctive relief that flouted separation of powers principles by establishing the court as overseer of DHS enforcement operations in Minnesota, R. Doc. 85, at 71-72; ignored *City of Los Angeles v. Lyons* by finding that plaintiffs had standing to seek prospective relief based on five isolated instances of misconduct, *id.* at 43-47; and concluded as a categorical matter that the government's evidence was "entitled to considerably less weight than Plaintiffs' [evidence]," *id.* at 36-40.

After this Court stayed that injunction and defendants filed their opening brief, plaintiffs sought to dismiss the appeal on mootness grounds. Plaintiffs argued that the injunction was moot because Operation Metro Surge was over and, therefore, the challenged conduct enjoined by the preliminary injunction would not recur. Simultaneously, however, plaintiffs filed an amended complaint alleging that such

conduct was ongoing and seeking to permanently enjoin that conduct. By essentially refiling their claims and asking the district court to issue an even broader permanent injunction, plaintiffs have engaged in the same gamesmanship the Seventh Circuit was concerned about in *Chicago Headline.*

Thus, if this Court has concerns about mootness, it should follow the Seventh Circuit's course and vacate the preliminary injunction before remanding.

**4.** If the Court does remand, it should do so with instructions that the district court dismiss plaintiffs' amended complaint as moot, too. The district court's indicative ruling is premised on a clear demarcation between Operation Metro Surge conduct and non-Operation Metro Surge conduct, with the temporal dividing line being Tom Homan's announcement regarding Operation Metro Surge on February 12, 2026. In the district court's view, because those categories of conduct are discrete, the preliminary injunction does not apply to non-Operation Metro Surge conduct. As we have explained, that is not how the preliminary injunction is written. But if that framework is correct, it dooms plaintiffs' amended complaint, which requests that the district court permanently enjoin future non-Operation Metro Surge conduct because of alleged wrongdoing solely attributable to Operation Metro Surge conduct. R. Doc. 136, at 59-97. As the district court acknowledged, this argument "is not without some force." R. Doc. 246, at 9.

If there is nothing for the preliminary injunction to enjoin because of the announcement that Operation Metro Surge would end, then there is nothing for the

district court to permanently enjoin either. Either plaintiffs believe the allegedly wrongful conduct purportedly justifying injunctive relief is over, or they do not. Accordingly, if the Court remands for the district court to vacate the preliminary injunction as moot, it should also instruct the district court to dismiss the amended complaint as moot, too.

5.    For several reasons, this Court should not vacate its order staying the preliminary injunction. First, the Court stayed the injunction because it was both "too vague" and "too broad," Order 3 (Jan. 26, 2026) (per curiam), not because of the underlying merits of the dispute. Regardless of whether any conditions have changed such that the preliminary injunction is moot, this Court's analysis of the injunction's overbreadth and ambiguity provides important guidance to litigants and district courts about the proper scope of injunctive relief. Second, as just noted, the circumstances of this case reek of gamesmanship, and this Court should not grant plaintiffs' request for a mulligan by wiping the slate clean. Finally, the cases cited by plaintiffs do not support vacatur of the stay order. In *Fauconniere Manufacturing Corporation v. Secretary of Defense*, 794 F.2d 350 (8th Cir. 1986), the Court did not vacate its own stay order because there, the district court stayed the injunction pending appeal, *id.* at 350. And in *Arc of Iowa v. Reynolds*, 33 F.4th 1042 (8th Cir. 2022), this Court vacated a stay order that remanded and instructed "the district court to enter a tailored injunction," Order, *Arc of Iowa v. Reynolds*, No. 21-3268 (8th Cir. Jan. 25, 2022). There, it made sense for

the Court to vacate the order instructing the district court to enter an injunction that the Court vacated as moot. Of course, that is not true here.

## CONCLUSION

For the foregoing reasons, the Court should deny Appellees' request to remand. Alternatively, defendants ask the Court to vacate the injunction before remanding with instructions that the district court dismiss the case as moot.

Respectfully submitted,

BRETT A. SHUMATE
  *Assistant Attorney General*
YAAKOV M. ROTH
  *Principal Deputy Assistant Attorney*
  *General*
ERIC D. MCARTHUR
  *Deputy Assistant Attorney General*
MARK R. FREEMAN
AUGUST FLENTJE
  /s/ *Brenna H. Scully*
BRENNA H. SCULLY
  *Attorneys, Appellate Staff*
  *Civil Division*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 307-1754*
  *Brenna.scully@usdoj.gov*

MARCH 2026

**CERTIFICATE OF COMPLIANCE**

This Opposition complies with the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,320 words. This Opposition also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

Pursuant to Circuit Rule 28A(h)(2), I further certify that the Opposition has been scanned for viruses, and the Opposition is virus free.

/s/ *Brenna H. Scully*
Brenna H. Scully

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2026, I electronically filed the foregoing

Opposition with the Clerk of the Court for the United States Court of Appeals for the

Eighth Circuit by using the appellate CM/ECF system.  Service will be accomplished

by the appellate CM/ECF system on all counsel of record.

_/s/ Brenna H. Scully_____

Brenna H. Scully