## UNITED STATES DISTRICT COURT
### DISTRICT OF MINNESOTA

---

Susan Tincher, John Biestman, Janet Lee, Lucia Webb, Abdikadir Noor, and Alan Crenshaw, *on behalf of themselves and other similarly situated individuals*,

        Plaintiffs,

v.

Kristi Noem, Secretary of U.S. Department Of Homeland Security; Todd Lyons, Acting Director, U.S. Immigration and Customs Enforcement (ICE); Marcos Charles, Acting Executive Associate Director, Enforcement and Removal Operations (ERO), ICE; David Easterwood, Acting Field Office Director, ERO, ICE Saint Paul Field Office; John A. Condon, Acting Executive Associate Director, Homeland Security Investigations; the Department of Homeland Security; Unidentified Federal Agencies; and Unidentified Federal Agents; *in their official capacities*,

        Defendants.

No. 0:25-cv-4669 (KMM/DTS)


**ORDER**

---

This matter is before the Court on Plaintiffs' Motion for an Indicative Ruling Pursuant to Federal Rule of Civil Procedure 62.1. (Dkt. 237.) For the following reasons, the Motion is granted. If the Court had jurisdiction to do so, it would grant a motion to dissolve the January 16, 2026 Preliminary Injunction because it is now moot.

Appellate Case: 26-1105   Page: 1   Date Filed: 03/05/2026 Entry ID: 5615982

## I.   BACKGROUND

Plaintiffs initiated this action on December 17, 2025 alleging that Defendants and their agents violated Plaintiffs' First and Fourth Amendment rights while carrying out Defendants' immigration enforcement activities in Minnesota. (*See generally* Dkt. 1.) Plaintiffs also moved for a temporary restraining order, which the Court converted to a motion for a preliminary injunction. (Dkts. 16, 24.)

On January 16, 2026, the Court granted that motion and issued a preliminary injunction ("Injunction") enjoining Defendants and their agents from engaging in certain conduct. (Dkt. 85.) The Court observed that its Injunction was narrower than what Plaintiffs sought, in part because of Defendants' concern that a broader injunction could hamper routine federal law enforcement activities unrelated to the immigration enforcement operation then underway. As the Court explained:

> [T]he Court has limited the language used in the injunction to the Defendants and their officers and agents engaging in immigration enforcement activities as part of the current Operation Metro Surge. While the Court declines to specify a geographic limitation at this time because the operation is expanding beyond Minneapolis and St. Paul, it makes clear that the regularly conducted business of Border Patrol agents on the northern border, Coast Guard officers on the Great Lakes, customs officials at the airports, and other federal officers doing their work unrelated to Operation Metro Surge are not covered by the injunction.

(*Id.* at 79.) The Injunction's protections covered "all persons who do or will in the future record, observe, and/or protest Operation Metro Surge and related operations that have

2

been ongoing in this District since December 4, 2025." (*Id.* at 81 ¶ 1.)[1] The Injunction's limitations constrained "Defendants and their officers and agents operating in the District of Minnesota to conduct immigration enforcement activities as part of Operation Metro Surge" as well as "to Defendants and their officers and agents responding to protests that arise in response to Operation Metro Surge." (*Id.* at 81 ¶ 2.) These two categories of officers and agents were identified as "Covered Federal Agents." (*Id.*) The Court then specified that the Injunction did not "apply to Defendants and their officers and agents otherwise conducting routine operations within the District of Minnesota." (*Id.* at 81–82 ¶ 2.) Finally, the Injunction established it would "remain in effect until Operation Metro Surge concludes or the conditions change such that it is no longer necessary." (*Id.* at 82 ¶ 5.)

On January 19, 2026, Defendants filed a notice of appeal from the Injunction to the United States Court of Appeals for the Eighth Circuit, and, a day later, filed a motion to stay the Injunction pending appeal. On January 21, the Eighth Circuit entered an administrative stay of the Injunction, and soon thereafter granted Defendants' motion to stay the Injunction pending appeal. *Tincher v. Noem*, 164 F.4th 1097, 1098 (8th Cir. 2026).

On February 13, 2026, Plaintiffs filed a motion before the Eighth Circuit seeking to stay the proceedings to allow Plaintiffs time to file a motion to dissolve the Injunction before this Court.[2] Pls.-Appellees' Mot. to Stay Proceedings, *Tincher v. Noem*, No. 26-1105 (8th Cir. Feb. 13, 2026). Defendants opposed the request for a stay. Opp'n to Mot. to

---

[1] Citations are to the ECF pagination.

[2] Plaintiffs also filed an Amended Complaint in this Court on February 13. (Dkt. 136.)

Stay Proceedings, *Tincher v. Noem*, No. 26-1105 (8th Cir. Feb. 17, 2026). On February 19, 2026, the Eighth Circuit granted the stay in part, stating:

> After consideration of Plaintiffs-Appellees' Motion to Stay Proceedings and the Government's response, the Court will hold this appeal in abeyance until March 6, 2026 pending an indicative ruling by the district court on a motion to dissolve the preliminary injunction. See Fed. R. Civ. Pro. 62.1. If no indicative ruling is entered by that date or the district court denies such a motion, the appeal will proceed in due course.

(Dkt. 233). Plaintiffs subsequently filed this Motion on February 23, 2026, seeking, pursuant to Rule 62.1, an indicative ruling that the Court would dissolve the Injunction on the grounds that it is now moot. (Dkt. 237.) Defendants oppose the Motion. (Dkt. 245.)

## II.   LEGAL STANDARD

"[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Accordingly, once a notice of appeal has been filed, the district court is divested of jurisdiction over any matters at issue on appeal. *FutureFuel Chem. Co. v. Lonza, Inc*, 756 F.3d 641, 648 (8th Cir. 2014). However, "[t]he Federal Rules of Civil Procedure recognize that in some circumstances it can be helpful to the parties and to the court of appeals to know what the District Court might do if given the chance to consider some aspect of the appealed case." *Defs. of Wildlife v. Salazar*, 776 F. Supp. 2d 1182 (D. Mont. 2011) (citing Fed. R. Civ. P. 62.1). Specifically, Rule 62.1 creates a mechanism for considering "trial-court motions for relief that are filed when an appeal is pending[.]" 11 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 2911 (3d ed. Sept. 2025 Update). In relevant part, Rule 62.1 states:

4

(a) Relief Pending Appeal. If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may:

(1) defer considering the motion;

(2) deny the motion; or

(3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

Fed. R. Civ. P. 62.1(a). Here, the Court has been ordered to indicate how it would rule on a motion to dissolve the Preliminary Injunction if it had the jurisdiction to do so.

## III.    DISCUSSION

Plaintiffs assert that the Court's January 16th Preliminary Injunction is now moot and should be dissolved. A preliminary injunction can become moot "where the effective time period of the injunction has passed." *Stevenson v. Blytheville Sch. Dist. No. 5*, 762 F.3d 765, 768 (8th Cir. 2014) (quotation and emphasis omitted). If the passage of time or changing circumstances render an injunction moot, it should be dissolved. *See Forbes v. Ark. Educ. Television Commc'n Network Found.*, 982 F.2d 289 (8th Cir. 1992) (per curiam); *Fauconniere Mfg. Corp. v. Sec'y of Def.*, 794 F.2d 350, 352 (8th Cir. 1986); *see also Univ. of Tex. v. Camenisch*, 451 U.S. 390, 394 (1981) ("If the parties lack a legally cognizable interest in the determination whether the preliminary injunction was properly granted, . . . then we must vacate the district court's order and remand the case for consideration of the remaining issues.") (quoting *Ammond v. McGahn*, 532 F.2d 325, 328 (3d Cir. 1976)).

Appellate Case: 26-1105    Page: 5    Date Filed: 03/05/2026 Entry ID: 5615982

Plaintiffs argue that the Injunction is now moot because Operation Metro Surge ("OMS") has ended. They cite recent remarks from White House Border Czar Tom Homan, one of OMS's leaders, stating that OMS has ended and that the number of federal agents is being reduced. (*E.g.*, Dkt. 241-2 at 5 ("I have proposed, and President Trump has concurred, that this surge operation conclude."); Dkt 241-2 at 3 ("But as far as the immigration surge, it's over[.] . . . And we should be back to regular footprint within a week.").) And because the Injunction applies only to OMS-related conduct, Plaintiffs argue that the end of that Operation renders it moot.

For their part, Defendants do not dispute that OMS is over,[3] but contend that the Injunction is not moot because it encompasses not just OMS but also other "related operations." According to Defendants, the Injunction could remain relevant while other immigration enforcement activities are ongoing. Defendants further argue that protest activities are ongoing such that the Injunction continues to limit agents' responses to those protests.

The Court concludes that the Injunction is now moot because OMS has ended. The scope of the Injunction expressly encompassed only conduct stemming from OMS and excluded non-OMS conduct. Indeed, the Injunction specified that the covered class of plaintiffs were those "record[ing], observ[ing], and/or protest[ing] Operation Metro Surge

---

[3] Were there a dispute, the Court would have no trouble finding that OMS is over. In fact, the government has stated as much in at least one other case in this District. *Hussen v. Noem*, No. 26-cv-324 (ECT/ECW) (D. Minn.) (Dkt. 163 at 4:16–5:17, 5:24–6:12 (confirming drawdown of federal agents in Minnesota and describing OMS as "ending")); Dkt. 169-2 ¶¶ 3–7 (detailing the drawdown of agents and referring to OMS in the past tense)).

and related operations that have been ongoing in this District since December 4, 2025";
that the covered Defendants and officers were those "operating in the District of Minnesota
to conduct immigration enforcement activities as part of Operation Metro Surge" or
otherwise "responding to protests that arise in response to Operation Metro Surge[]"; and
that it excluded "Defendants and their officers and agents otherwise conducting routine
operations within the District of Minnesota." (Dkt. 85 at 81–82 ¶¶ 1–2.) Moreover, the
Injunction clearly stated that it "shall remain in effect until Operation Metro Surge
concludes[.]" (*Id.* at 82–83 ¶ 5.) The Injunction was expressly tied to the ongoing nature
of OMS; now that OMS has concluded, the Injunction can no longer be effective.

Defendants' arguments to the contrary are unpersuasive. First, Defendants
emphasize that the Injunction covers plaintiffs who "record, observe, and/or protest
Operation Metro Surge *and related operations* that have been ongoing in this District since
December 4, 2025." (*Id.* at 81 ¶ 1 (emphasis added).) But Defendants' focus on "and related
operations" strips this clause of its context. The plain language of the Injunction—both in
its discussion of the Court's limitations as to breadth and in the decretal language—clearly
ties it to OMS, which is now over. Moreover, Defendants' reading would vitiate any
temporal limit whatsoever on the Injunction, which is far from the limited order the Court
intended.

Defendants also argue that the Injunction is not moot because, even if OMS itself is
over, protests against it continue. Defendants cite a news article discussing a then-planned
week of action protesting ICE beginning more than 10 days after Mr. Homan's
announcement. But nothing in the article indicates that those protests were in response to

7

OMS; instead, it appears that they reflected opposition to ICE and the Department of Homeland Security generally. (Dkt. 245-1 at 2–3 (citing Kristi Miller, 2,000 Expected to Participate in Anti-ICE Organizing Effort, Pioneer Press (Feb. 24, 2026), https://www.twincities.com/2026/02/24/2000-expected-to-participate-in-anti-ice-organizing-effort (last visited Mar. 5, 2025)). It cannot be that the Injunction remains in effect indefinitely despite its express limitations simply because Minnesotans continue to protest ICE. More critically, the demonstrations Defendants point to fell beyond the scope of the Injunction because it only restricted the conduct of the Covered Federal Agents. All reporting suggested that only state and local officers engaged with these protestors, and no mention was made of any ICE or HSI agents. *See* Whipple Protests: 38 Arrests Made During Sunday Protest, Fox 9 KMSP (Mar. 1, 2026), https://www.fox9.com/news/whipple-protests-38-arrests (last visited Mar. 5, 2026) (detailing arrests made by state and county law enforcement officers). This demonstration does not support the idea that the Injunction is not moot. And Defendants provide no evidence that protests of the sort at issue in this case—individuals observing at the sites of immigration enforcement activity—is ongoing. *See Arc of Iowa v. Reynolds*, 33 F.4th 1042, 1044 (8th Cir. 2022) (vacating a preliminary injunction as moot where the "current conditions differ[ed] vastly from those prevailing when the district court addressed" the issues underlying the original litigation).

Finally, Defendants oppose dissolution of the Injunction because Plaintiffs refuse to dismiss the case as a whole. They argue that "if the preliminary injunction is moot, then so is Plaintiffs' First Amended Complaint." (Dkt. 245 at 5.) According to Defendants,

8

Plaintiffs are engaged in a "gambit" designed "to evade a potential adverse decision from the Eighth Circuit." (*Id.* at 7.) Defendants' argument that the case as a whole suffers from the same mootness issues that Plaintiffs ascribe to the Injunction is not without some force. It is not yet apparent whether there is, in fact, any daylight between the Plaintiffs' assertion that the Injunction is moot and their anticipated position that there nevertheless remains a live case or controversy in the Amended Complaint. However, the issue of whether the entire case is now moot is not currently before the Court, and the Court declines to address it prematurely. Should the Eighth Circuit remand this matter to this Court so it can grant a motion to dissolve the Injunction, nothing will prevent Defendants from then arguing that the entire case should be dismissed on mootness grounds as well. The Court will cross that bridge when it comes to it. But the tension in Plaintiffs' position on these issues does not preclude a finding that the end of OMS has rendered the January 16 Injunction moot.

Accordingly, the Court states pursuant to Rule 62.1(a)(3) that it would grant a timely motion to dissolve the Injunction if the Court of Appeals remands for that purpose.

## ORDER

For the reasons stated herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for an Indicative Ruling Pursuant to Federal Rule of Civil Procedure 62.1 (Dkt. 237) is **GRANTED**.

2. Pursuant to Rule 62.1, the Court indicates that it would grant a motion to dissolve the January 16, 2026 Preliminary Injunction (Dkt. 85) as moot if the Court of Appeals remands for that purpose.

Date: March 5, 2026                          *s/Katherine Menendez*
                                             Katherine Menendez
                                             United States District Judge

Appellate Case: 26-1105   Page: 9   Date Filed: 03/05/2026 Entry ID: 5615982